**William F. Fisher, Jr., Appellee, v. Harold F. Johnson et al., on appeal of F. A. MacNutt, Appellant.**

### Gen. No. 29,904.

1. Highways and streets—*driver of automobile charged with knowledge of rules of the road.* The driver of an automobile is chargeable with knowledge that the right of way must be given to a vehicle coming to an intersection from one's right.

2. Highways and streets—*disregarding right of way of approaching automobile at intersection as want of due care.* Even if an automobile coming to an intersection from the right, and thus having the right of way, was a few feet farther from the intersection than an automobile on the intersecting street, the

driver of the latter machine could not rightfully claim the exercise of due care, by assuming without looking, that because of that fact the driver of the other machine would not assert his right of way, coming as he was from the right.

3. NEGLIGENCE—*imputation of negligence of automobile driver to passenger*. Where two friends were accustomed to ride daily to their place of business in the automobile of the one or the other, as they usually determined the night before, and there was no division of expense, each bearing expense of keeping and maintaining his own automobile, and where, in a collision with another car, one of the two friends sustained injury and instituted suit against the driver, the negligence of such driver was not imputed to plaintiff on the theory that the two were engaged in a joint enterprise.

4. NEGLIGENCE—*imputation of negligence of automobile driver to passenger*. The negligence of the driver of an automobile could not be imputed to one driving with him, on the theory of joint enterprise, merely because the two had an arrangement to alternate day by day in the use of their respective automobiles, where the driver was in sole charge and the other occupant neither directed nor controlled the movement of the car or the method of driving.

5. HIGHWAYS AND STREETS—*when contributory negligence of plaintiff injured in automobile collision is question of fact under evidence*. A directed verdict on the ground of failure to prove due care by the plaintiff was properly refused, where in an action by a guest riding in an automobile, against the driver, there was no direct evidence of the use of due care by the plaintiff who was unable to speak for himself, but where it appeared that the mechanism of the car was such that it was impossible for him to have done anything in the way of controlling the car, and there was further evidence that he was a careful man in his habits, and in the absence of evidence to indicate that plaintiff could see the colliding car from where he sat before it came close, and the claimed fact that plaintiff might have been speaking to the driver at the time of the collision, could not be regarded as proof of contributory negligence.

6. DAMAGES—*excessiveness of verdict for personal injuries*. A verdict for $10,000 was held not excessive, where plaintiff was rendered unconscious and remained so until gradually restored to consciousness after operations on the skull and brain and spine, and where he was in the hospital for a month, and thereafter required medical attention and nursing, and was not entirely clear mentally for a considerable time, and where at the time of the trial he was still far different mentally and physically than before the accident, and his injuries were permanent, and his earning capacity was affected.

Fisher v. Johnson, 238 Ill. App. 25.

7. HARMLESS ERROR—*when erroneous description of statute in instruction not reversible.* Where an instruction set forth a °portion of the Motor Vehicle Act in force January 6, 1922, the time of the accident in question, and one of the counts of the declaration was based on the repealed Act of 1911, the erroneous description of the act was held not to be cause for reversal, as long as the count stated facts that brought the cause of action within the statute then in force, the two acts being substantially identical in respect to the violation charged.

8. INSTRUCTIONS—*indentation of quotation from statute as giving undue prominence thereto.* A contention that the quoted part of a statute set forth in an instruction was indented from the rest of the instruction, and in that respect gave the statute undue prominence, was held hypercritical.

9. INSTRUCTIONS—*giving abstract proposition of law as error.* The giving of an instruction stating an abstract proposition of law was not error where the jury could not have been misled.

10. HARMLESS ERROR—*propriety of instruction referring jury to declaration for issues.* The giving of an instruction which was faulty in referring the jury to the declaration for the issues instead of defining them was not error where the jury were not misled and the defendant was not prejudiced.

Appeal by defendant from the Circuit Court of Cook county; the Hon. JOHN A. SWANSON, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Affirmed. Opinion filed July 14, 1925. *Certiorari* denied by Supreme Court (making opinion final).

CASSELS, POTTER & BENTLEY, for appellant; RALPH F. PORTER, KENNETH B. HAWKINS and BARRY GILBERT, of counsel.

ELA, GROVER & MARCH and JUSTIN K. ORVIS, for appellee.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

Defendant MacNutt appeals from a judgment for $10,000 rendered against him in a personal injury suit. The case was tried on two counts of the declaration, one charging negligence by each of two defendants in the management of their respective automo-

biles, and the other, their negligent driving and operation of the same at an excessive rate of speed, whereby the automobiles collided and as a result plaintiff was injured. The jury found the other defendant, Harold F. Johnson, not guilty.

Fisher and MacNutt were intimate friends, living as neighbors in Oak Park, Illinois, and being employed by the Western Electric Company at its plant about six miles from their homes, to which they were accustomed to ride daily in the automobile of one or the other, as they usually determined upon the night before, consulting sometimes the convenience of the family of one or the other in requiring the use of an automobile on the following day. This arrangement continued for a long space of time. There was no division of expenses, each bearing the expense of keeping and maintaining his own automobile the same as if they had no such arrangement, which resulted in their practically alternating in the driving, Fisher taking MacNutt in his automobile one day and MacNutt taking Fisher in his car the next.

Pursuant to an understanding of that kind MacNutt called with his car for Fisher at his home on the day of the accident to drive with him to their place of business. When driving south on Lombard street his car collided with that of defendant Johnson at its intersection with Erie street, on which Johnson was driving east. The impact carried MacNutt's car to the southeast corner to which also Johnson's skidded, where Fisher was hurled out receiving injuries of a severe character.

These three were the only eyewitnesses of the collision. But the evidence with regard thereto was confined to the testimony of the two defendants, MacNutt and Johnson, as Fisher could not recall the facts on account of retrograde amnesia resulting from his injuries.

MacNutt's version was that he was driving at the rate of 15 miles an hour, according to his best judgment; that when he was about 30 or 40 feet north of Erie street he noticed Johnson's car 120 feet or more west of Lombard; that he then looked to the east, and when he looked again to the west he "caught the flash" of Johnson's car as it struck his in the right rear. He drew the inference from these circumstances that Johnson was driving at the rate of 35 miles an hour. He did not recall that he sounded his horn or heard Johnson's.

Johnson's version was that he was going about 15 miles an hour and MacNutt 15 to 20; that he did not moderate his speed, knowing he had the right of way, until, realizing the danger of a collision just immediately before he crossed over the west line of Lombard street, he put on his emergency brake and turned his car to the south and the left fender of his car came in contact with the right fender of MacNutt's; that when he first observed MacNutt the latter was about 40 feet north of Erie and he about 30 feet west of Lombard; that he sounded his horn and MacNutt did not, and did not change his direction. There was also evidence of statements by MacNutt to the effect that he "miscalculated" and seeing the danger was imminent "stepped on the gas" to pass in front of Johnson's car. The jury evidently accepted Johnson's version of the accident.

It is the alleged negligence of MacNutt only that we are to consider, and it might well be inferred from his own testimony.

Knowing, as he must, that the right of way must be given to vehicles coming to an intersection from one's right, he should not have deferred a second glance towards Johnson's automobile until the very moment a collision would take place if at all. Even if Johnson was a little further away from the intersection, that would not excuse him from looking again to see

whether Johnson might not assert claim to the right of way, approaching as he was from the direction given preference under the law. The jury, too, may well have concluded that the relative position of the two cars to the intersection at the time the drivers came into one another's vision, may not have been accurately estimated by MacNutt, in view of his subsequent statements, and that the distances therefrom were about the same, as Johnson testified, and that Johnson was therefore entitled to the right of way. There was room in the evidence for that conclusion, and that MacNutt was guilty of negligence in the operation of his car, regardless of any question of speed. Even if Johnson was a few feet farther from the intersection, MacNutt cannot rightfully claim the exercise of due care by assuming, without looking, that because of that fact Johnson would not assert his claim to the right of way, coming as he was from MacNutt's right.

But it is urged that upon the above state of facts, if MacNutt was negligent, his negligence would be imputed to Fisher. The theory of such contention is that Fisher and MacNutt were at the time engaged in a joint enterprise. We do not think the arrangement can be so regarded. To be sure it was one for their mutual accommodation, a day to day affair, but it involved no common financial interest, no partnership, no relation of master and servant, or principal and agent, and no right of either to direct or control the other in the management of his car. The parties being neighbors and social friends, engaged at the same place of business, evidently regarded it unnecessary because of such relations to drive two automobiles to their place of business and leave them there all day unused, when one would suffice, and the other could be left for the use of the owner's family. Such a scheme of mutual accommodation did not clothe the arrangement with any characteristic of a joint enterprise, to

which the doctrine of imputable negligence may be applied.

Referring to cases of joint enterprise it was said in *Robison v. Oregon-Washington R. & Nav. Co.,* 90 Ore. 509:

"In all of them there runs a vein of common financial interest indicating a *quasi* partnership entailing the usual joint control. This would seem to furnish the ultimate distinguishing characteristic of joint venture in such cases, which is none other than the right, either express or implied, to direct the movement of the vehicle employed in the transportation connected with the venture. This must be so, because fault in the operation of the vehicle is charged as negligence."

The court went on to say that if the control is outside the scope of the joint scheme or is vested exclusively in one of the members of it, imputed negligence in operation will not arise.

The right to direct or participate in the control of the vehicle claimed to be used in a joint enterprise has frequently been applied in testing whether the negligence of the driver could be imputed to his companion, and the rule, as above stated, is supported by the greater weight of authority. (See *Shultz v. Old Colony St. R. Co.,* 193 Mass. 309; 8 L. R. A. [N. S.] 597; *Wagner v. Kloster,* 188 Iowa 174, 175 N. W. 840; *Hollister v. Hines,* 150 Minn. 185; *Kokesh v. Price,* 136 Minn. 304, 161 N. W. 715 [16 N. C. C. A. 1050]; *Bryant v. Pacific Elec. Ry. Co.,* 174 Cal. 737.) Discussing the subject in Huddy on Automobiles, the author says:

"Parties cannot be said to be engaged in a joint enterprise unless there is a community of interest in the objects or purposes of the undertaking and an equal right to direct and govern the movement of each other with respect thereto." (Section 811, p. 900, 7th ed.)

From examination of the authorities cited and others we have no doubt that the author has stated the

correct rule. And we might add, in the language of *Nonn v. Chicago City Ry. Co.*, 232 Ill. 378: "There has not been a scintilla of evidence pointed out which indicates that appellee could direct or control the movements of the wagon (automobile) or the method of driving. The driver was in sole charge. This being the state of the record, we cannot agree with appellant's contention that the negligence of the driver, if any, would be imputed to appellee."

We regard the circumstances in no different light than if on each occasion when one drove the other in his car to and from their place of business it was upon an express invitation from the former to the latter to be his guest, and therefore negligence could not be imputed to the latter on the theory that because they were accustomed to exchange courtesies and ride together they were engaged in a joint enterprise or undertaking.

Cases cited by appellant where there was unquestionably a joint enterprise need not be discussed.

It is further urged by appellant that there was no evidence legally tending to prove the cause of action alleged, and therefore the court should have directed a verdict for MacNutt.

This contention is based on the claim that no direct evidence was introduced by plaintiff, on whom the burden rested, to show that he was in the exercise of due care, and the claim that there was evidence to the contrary. It is true that no direct evidence on the subject was offered, Fisher being unable to speak for himself. As a guest, however, having no control over the car or its management, he was not called upon to exercise care for himself by any affirmative act unless it was to caution MacNutt of any danger he had an opportunity to discover in the position in which he was placed. There was nothing in the evidence of either MacNutt or Johnson to indicate that Fisher saw or could see Johnson, from his position in the car,

at least in time to say or do anything that would have averted the danger. It was winter weather, and the car was inclosed by curtains on the sides and a glass shield in front. They sat in the front seat, the driver at the left and Fisher at the right. The front seat was somewhat elevated by reason of a gasoline tank underneath it. As Fisher was a tall man, 6 feet 4 inches, it brought his head up to the hood, which sloped in front, and his eyes about 7 inches above the isinglass windows in the curtain at his right, which was fastened to the shield in front so that he could see only a short distance in front, and to his right only a few feet from the car. The evidence tended to show that under these circumstances he was hardly in position to see a car coming to the crossing from his right until close to it. And had he seen the car, inasmuch as MacNutt said he "stepped on the gas" to pass in front of it, as he got close to it, it is hardly within reason that Fisher could by any warning have averted the accident. The evidence shows too that the mechanism of the car was such that it was impossible for him in his position to have done anything in the way of controlling the car. There was also evidence tending to show that Fisher was a careful man in his habits and not disposed to take risks.

Because Johnson, who was called by the plaintiff, said that he asked MacNutt immediately after the accident if he did not see him, and that MacNutt replied, "Fisher was talking to me," it is claimed there was affirmative proof of the latter's negligence. Even if Fisher could be said to be bound by that testimony, yet the mere fact that he spoke to MacNutt cannot be regarded as proof of contributory negligence. For aught that appears to the contrary what Fisher said may have been in the nature of a warning.

We do not think it can be said that the evidence as submitted to the jury lacked any element of the cause

of action, or that the court would have been justified in directing a verdict against plaintiff.

It is claimed that the damages awarded are excessive. Plaintiff was rendered unconscious, and remained so, until gradually restored to consciousness after surgical operations on the skull and brain and the lumbar region of the spinal column. He was in the hospital for about a month, where his case required much medical attention and nursing, and was not entirely clear mentally after his return home when he still required medical treatment for considerable time. His injuries have left him a far different man physically and mentally than before the accident. He still suffers from them in various ways and they are such as render him less efficient, both physically and mentally, and in his earning capacity, and they are deemed permanent. Without a detailed statement of his sufferings, ills and other lesser injuries, we think it enough to say that we do not regard the damages awarded as excessive.

Complaint is made of rulings on instructions. No. 8 set forth a portion of the Motor Vehicle Law as in force January 6, 1922, the time of the accident.

The eighth count (one of the counts on which the case was tried) pleaded a violation of the Motor Vehicle Act with respect to speed, in negligently driving at a greater rate of speed than 10 miles per hour, after referring to and setting forth the Motor Vehicle Act of 1911. That act was repealed by the Motor Vehicle Act approved June 30, 1919, in force January 1, 1920, and at the time of the accident. While the two acts vary in different respects, the express provision upon which the count predicates the cause of action is practically the same in both acts, and under either act is applicable to a vehicle of the kind in question, and to the same conditions. The substance of appellant's contention is that the instruction suggested to the jury a ground of recovery not alleged in the declaration. If we disregard as surplusage the unnecessary reference to and setting forth *in hæc*

*verba* the particular act described as violated, and consider the only material matter alleged, viz., the particular respect in which the statute in force was violated, the jury could not have been misled by the instruction. As long as the count stated facts that brought the cause of action within the statute then in force, that was enough (*Wagner v. Chicago, R. I. & P. R. Co.,* 277 Ill. 114, 120), and an erroneous designation or description of the act, which did not affect the cause of action as set forth, would be disregarded.

Complaint is made that the quoted part of the statute set forth in the instruction was indented from the rest of the instruction, and in that respect gave the statute undue prominence. The contention is hypercritical.

Two other instructions are alleged to be erroneous, one because it gives an abstract statement of the law, but which we think could not have misled the jury in any way, and the other because it refers to negligence in the operation of the automobile "as charged in the declaration or some count thereof." The complaint of the latter instruction is based mainly upon appellant's theory that the eighth count above referred to does not state a cause of action, a theory with which we do not agree.

While the instruction is faulty in referring the jury to the declaration for the issues, instead of defining them, we fail to see that the jury were in anywise misled, or defendant MacNutt prejudiced by the law as stated in the instruction.

We think the judgment should be affirmed.

*Affirmed.*

GRIDLEY and FITCH, JJ., concur.