Mathilda Pralle, Appellee, v. Metropolitan Life Insurance Company, Appellant.

Gen. No. 33,013.

HOYNE, O'CONNOR & RUBINKAM, for appellant.

EARL J. WALKER, for appellee.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action to recover $10,000 which she claimed was due her under an oral contract of insurance entered into between her husband, John H. Pralle, and the defendant Insurance Company. There was a verdict and judgment in her favor for $11,197.25 being the full amount she claimed, with interest.

August 21, 1925, plaintiff filed her declaration in which she alleged that on April 15, 1925, the defendant Insurance Company orally promised to insure John H. Pralle, her husband, against accidents "until and pending acceptance or rejection by it (defendant) of an application for insurance . . . and until the issuance of a policy by said defendant or until said application has been rejected by said defendant"; that on April 25, 1925, John H. Pralle was accidentally run over by a motor vehicle and killed. The common counts were added. On December 22, 1926, plaintiff by leave of court filed an amended declaration in two counts, each of which contained allegations setting up the contract of insurance substantially as in the original declaration. A number of pleas and replications were filed, but it is unnecessary to refer to them here. The case went to trial on December 7, 1927, and during the trial, December 9, 1927, plaintiff filed an additional count in which it was alleged that John H. Pralle, her husband, on April 14, 1925, entered into an oral contract of insurance with the defendant through its agent, Ernest Webber, who had apparent authority to make such

contract; that the contract provided that the defendant Insurance Company would pay plaintiff $10,000 in case John H. Pralle was accidentally killed at any time within one year from that date; that John H. Pralle accepted the proposition and paid the annual premium of $63. Afterwards and during the trial, December 12, 1927, plaintiff filed another additional count wherein she alleged the making of the insurance contract between her husband John H. Pralle and defendant, through its agent Webber; the agreement or contract being that in consideration of Pralle paying the annual premium of $63 defendant "would write up and deliver within a reasonable time a policy dated and taking effect for one year"; that the agent at that time presented to John H. Pralle a form of application which Pralle signed but did not read and did not know the contents thereof.

On December 17, 1927, the jury returned its verdict in favor of plaintiff and against the defendant, fixing the damages as above stated. On February 24, 1928, upon motion of plaintiff an order was entered restoring lost instructions which the court had given to the jury, and on March 30, 1928, the record discloses the court entered an order stating that the matter came on to be heard upon the defendant's motion for a new trial, and after argument of counsel and due deliberation by the court the motion was overruled and defendant excepted, whereupon defendant entered its motion in arrest of judgment, which motion also was overruled and the defendant excepted, and thereupon the court entered judgment on the verdict and the defendant's prayer for an appeal was allowed.

The evidence shows that John H. Pralle, on April 15, 1925, and for some time prior thereto, was in the wholesale milk business at Crete, Illinois; he was 44 years old and lived with his family at 216 South Main street, Crete, Illinois; that the defendant Insurance Company

maintained a district office at that time in Roseland, Chicago, Illinois; that Ernest Webber was employed by the defendant in the Roseland district and canvassed Crete, Steger, and other suburbs south of Chicago, and on the evening of April 15, 1925, he went to Pralle's home in Crete to solicit him for accident insurance. The evidence further shows that Webber had talked to Pralle on the subject a number of times prior to that date; that Pralle agreed with Webber to take $10,000 accident insurance in the defendant company; that Webber then produced a blank application which contained 30 printed questions and Webber testified that he asked Pralle all of the questions and wrote down the answers that Pralle gave and that Pralle then signed the application; that Webber then took the application and in due course of business turned it over to another representative of the defendant, whose duty it was to make an inspection, as was the custom where persons apply for such insurance, and to report the same. The evidence further shows that Albert A. Lupian, assistant manager of the defendant in the Roseland district, whose duty it was to make the inspection, testified that he got the application on Saturday, April 18th, and proceeded to make the inspection, as he was the one who did such work in a number of the suburbs in that vicinity; that he made three trips to Crete to see Pralle to verify the date of Pralle's birth, his occupation, and the other answers appearing in the application; that this was the usual custom followed where the application was for accident policies and the amount was $5,000 or more; that he was unable to see Pralle on either of the occasions; that after the three trips, although he had not seen Pralle, he completed his inspection and filled out the blank report on the back of the application; that he had known Pralle by sight for some time; that he completed his report of inspection on April 25th but did not forward the ap-

plication, as was the custom, to the home office in New York for acceptance or rejection because on that day he learned that Mr. Pralle had been accidentally killed by being run over by one of Pralle's motor trucks which was used in his milk business. Pralle having died, the policy was not issued.

Harold and Mildred Pralle, son and daughter of plaintiff and John Pralle, the deceased, and Otto Hecht, a neighbor, gave testimony to the effect that they were at the Pralle home on the evening of April 15, 1925, when Webber, defendant's representative, called on John H. Pralle in reference to the insurance; that they heard the conversation between Pralle and Webber; that Webber told Pralle to sign the blank application and that Webber would later fill out the answers to the questions, and that if Pralle would pay the annual premium, $63, at that time, he could be covered by insurance "from that time on"; that Pralle agreed to this, made out his check for the $63 and gave it to Webber who left with the application and the check; that during the conversation between Webber and Pralle, Webber stated that he knew how to answer all the questions in the application except Pralle's age, that thereupon Pralle asked his wife how old he was, as the matter had slipped his memory at that time, and Mrs. Pralle replied that he was 44 years old. Webber testified that he had known the Pralle family for some time and had written insurance for some of them since the death of John H. Pralle; that he was friendly with the family; that when he called at the Pralle home on April 15, 1925, after again taking the insurance matter up with Pralle, he asked Pralle all the questions; that Pralle made answer to each of them and that the witness wrote down the answers as given by Pralle except the answer to question 29, where he inadvertently wrote the answer "No" when the answer given was "Yes." He further testified that a blank receipt was

attached to the bottom of the application; that he tore it off, the paper being perforated, filled out the receipt and gave it to Pralle. A copy of it is in the record. By it defendant acknowledged receipt of $63 from Pralle "on account of application made this date to the METROPOLITAN LIFE INSURANCE COMPANY. Said amount to be applied on account of the policy, if one be issued as applied for, or to be returned if the application is declined. . . . No insurance is in force upon the application unless and until a policy be issued thereon and delivered in accordance with its terms." This receipt was signed by Webber and is dated April 15, 1925. Plaintiff's son testified that after his father's death he searched through all his father's papers but was unable to find any receipt such as Webber testified he gave to the deceased at the time the application was signed. Webber further testified that he did not tell Pralle that he would be covered by insurance from that time but on the contrary had explained to Pralle that the application must be acted upon by the defendant company, and further testified that no one was present at the time the application was filled out but Pralle and himself. There is further evidence in the record, but we think it unnecessary to refer to it here. No contention is made that any of the answers written in the application are not true, except the answer to question 29 above referred to.

Upon a careful examination of the application and of all the evidence in the record, we are clearly of the opinion that the answers to the questions as written in the application were the answers given by John H. Pralle to Webber as testified to by the latter, because it is obvious that the answers could not have been made by Webber. We will refer to some of them. The answers give Pralle's place of birth as Beecher and the date as May 23, 1881; that he was 5 feet 11 inches in height and weighed 180 pounds; that he was proprietor

of a wholesale milk business and that he carried life insurance in the defendant company and in the International Life Insurance Company. Then follows a number of other questions and answers usually found in similar applications and they are of such a character that we are of the opinion the answers could only have been made by John H. Pralle, as Webber testified. We are therefore of the opinion that the finding of the jury in favor of plaintiff is against the manifest weight of the evidence.

We are also of the opinion that the court should have directed a verdict at the close of all the evidence in favor of the defendant as it requested, for the reason that the evidence without dispute shows that Pralle knew he was signing an application for insurance; and the application states that no insurance would be in force "unless and until this application is approved at the Home office of the Company and a policy is issued." And therefore the parol agreement as testified to by witnesses for the plaintiff, if there were such an agreement, was void. *Ivie v. International Life Ins. Co.* 217 Ala. 559, 117 So. 176. Nor does the evidence offered by plaintiff, showing the rules and instructions given by the defendant to Webber and other agents, authorize the conclusion that Webber had authority, real or apparent, to enter into binding insurance contracts on behalf of the defendant. This evidence only tends to show that Webber and similar agents were instructed to give "binding receipts" to persons making applications so as to bind such persons, but it is obvious that he could not bind the defendant company because it had to pass on all applications before any insurance was written. On the other hand, plaintiff cites a number of authorities holding that an oral contract of insurance entered into between a person and a representative of an insurance company is valid and binding. Undoubtedly this has been held to be the law as applied to fire insurance and automobile insurance,

but we think it is not applicable under the facts disclosed in the instant case. We are also of the opinion that oral contracts of insurance are valid in Illinois and that the statute of June 29, 1915, Cahill's St. ch. 73, ¶ 467 *et seq.*, is inapplicable to such contracts. That statute deals with written policies of insurance and there was no policy in the instant case.

Counsel for plaintiff in this connection cites the case of *Massachusetts Bond & Ins. Co. v. Vance,* 74 Okla. 261, 180 Pac. 693; 15 A. L. R. 981; but in that case the application was not signed. The court there said that if an application had been signed, "an entirely different proposition would be presented."

Counsel for plaintiff contends that the sufficiency of the evidence to sustain the verdict is not before the court, because "the bill of exceptions contains no motion for a new trial, order overruling the same, nor objection to such order," and that it is not sufficient that a recital in the common-law record shows that the motion for a new trial was made and overruled and an exception taken to such order. Since the amendment of 1911 to section 81 of the Practice Act, Cahill's St. ch. 110, ¶ 81, it is unnecessary to incorporate a formal exception into the record to preserve the rulings of the trial court for review. *Miller v. Anderson,* 269 Ill. 608. We think the point is not well taken. The judgment order itself obviously is a part of the common-law record and from it, it appears that a motion for a new trial and a motion in arrest of judgment were made and overruled, and we think the court ought not to be so blind as to be unable to see this in the record. In fact we have never seen a record in a court of review where a motion for a new trial and a motion in arrest of judgment were made and overruled, that these facts did not appear in the judgment order. It is and has been the universal practice for a great many years. The clerk of the court writes into the record the orders that are given by the court. The merits of a con-

troversy ought not to be decided on such technicalities. But in any event, the defendant by leave of court has filed in this court a supplemental record showing that a motion for a new trial had been made and overruled.

The judgment of the superior court of Cook county is reversed, but since we hold that there should have been a directed verdict at the close of all the evidence in favor of defendant, the cause will not be remanded.

*Judgment reversed.*

McSurely, J., concurs.

Mr. Justice Matchett specially concurring: I agree with the conclusion but not that a motion for a new trial need not be preserved by bill of exceptions. Perhaps it ought to be so, but I understand *Colbert v. Holland Furnace Co.* 241 Ill. App. 583; *People v. Levin,* 318 Ill. 227, and cases there cited to hold otherwise.