## Virginia Kleinow Warner, Appellee, v. Harry Burke et al., Defendants.  Harry Cohen, Appellant.

### Gen. No. 40,515.

Opinion filed October 31, 1939.
Rehearing denied November 15, 1939.

GEORGE LANDON, of Chicago, for appellant.

HEINEMAN & LANGSETT and WENDELL R. MANGES, all
of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the
court.

An action by Virginia Kleinow Warner, plaintiff,
against Harry Burke, Montez Burke and Harry Cohen,
defendants, for injuries received by her on March 6,

1937, when she was struck by an automobile owned by Harry Burke, defendant, and driven by Montez Burke, defendant. A jury returned a verdict finding Harry Cohen guilty and assessing plaintiff's damages at the sum of $6,000, and finding Harry Burke and Montez Burke not guilty. The jury also returned answers to special interrogatories submitted to them, in which they found that Cohen was operating his automobile at the time and place in question in a wilful and wanton manner, and that Montez Burke was not operating the Burke automobile at the time and place in question in a wilful and wanton manner. Judgment was entered on the verdict and defendant Harry Cohen appeals.

The complaint consists of four counts. The first charges that on March 6, 1937, Montez Burke was then and there operating the automobile of Harry Burke, defendant, with his permission, upon and along Potomac avenue at or near its intersection with another public highway known as Mayfield avenue, in Chicago; that on said date plaintiff was lawfully and rightfully upon and along or near the said intersection; that said defendant then and there so carelessly and negligently drove the said automobile that as a direct and proximate result thereof the automobile ran upon and against and struck plaintiff with great force and violence; that at the time and place aforesaid said defendant drove said automobile at an unreasonable rate of speed. The second count charges that Harry Burke, defendant, permitted his automobile to be then and there driven in a wilful, wanton and malicious manner by Montez Burke, defendant, with a conscious disregard for the safety of plaintiff and others, in and along said Potomac avenue and the sidewalk parallel with said avenue, and then and there Montez Burke, defendant, ran said automobile upon and against plaintiff. The third count charges in paragraphs 1 to 4, inclusive, that on said date Harry Cohen, defendant, was the owner of a certain automobile and

was then and there operating the same in a northerly direction upon Mayfield avenue near its intersection with Potomac avenue; that plaintiff was then and there rightfully in, upon and near said intersection; that it was then and there the duty of said defendant to cause said automobile to be driven and operated, and to drive and operate said automobile, with due care and caution so as to prevent injury to persons rightfully and lawfully at the place and time aforesaid, and so as to then and there prevent injury to plaintiff. The count further charges that said defendant carelessly and negligently drove said automobile, that as a result thereof the automobile ran upon and against a certain automobile driven by Montez Burke, defendant, and that the automobile of Montez Burke, defendant, was thereby, as a direct result of said collision, thrown upon and knocked upon and against plaintiff; that at the time and place aforesaid defendant Cohen drove said automobile at an unreasonable rate of speed; that (paragraphs 10 and 11) by reason of the premises aforesaid plaintiff suffered great bodily injury, both internally and externally, and sustained severe and permanent injury to her back and spine (etc.). (Here follow allegations as to alleged injuries sustained.) The fourth count repeats and realleges paragraphs 1 to 4, inclusive, of the third count, and further charges that Cohen, defendant, not regarding his duty in the premises, and with a conscious disregard for the safety of plaintiff, and others, drove his automobile in a wilful, wanton and malicious manner in and along Mayfield avenue at or near the intersection of Potomac avenue and then and there ran his automobile upon and against and struck a certain automobile then and there driven and operated by Montez Burke, defendant, in an easterly direction in and along Potomac avenue near the intersection of Mayfield avenue and Potomac avenue, in Chicago, and that the automobile so driven by Montez Burke, de-

fendant, was thereby and as a direct result of such collision thrown and knocked upon and against the plaintiff with great force and violence, and she was then and there, as a direct result and in consequence of the wilful, wanton and malicious conduct of defendant Cohen, knocked down and thrown violently to the sidewalk there. The count repeats the allegations of paragraphs 10 and 11 of the third count.

The answer of defendant Harry Cohen (hereinafter called appellant) admits the ownership and operation of the automobile he was driving; and the answer of the Burkes admits the ownership and operation of the automobile that Montez Burke was driving. The answer of appellant denies all of the charges of negligence, also the charges of wilful and wanton negligence, alleged in the complaint against him.

We deem it necessary to consider only one contention raised by appellant, viz., that the verdict as to him is against the manifest weight of the evidence, and that the special finding of the jury that he was guilty of wilful and wanton conduct was so unwarranted by the evidence that it conclusively shows that the verdict and the special finding resulted from prejudice rather than from a fair and impartial consideration of the evidence. Appellant argues that the finding of not guilty as to the Burkes clearly shows that the jury was not fair and impartial.

A few minutes after 9 a. m. on the day in question the automobile of appellant was traveling north on Mayfield avenue, the car of defendant Harry Burke, driven by Montez Burke, defendant, was traveling east on Potomac avenue, and the two cars collided within the intersection of the two avenues. At the time of the collision plaintiff was on the sidewalk on the east side of Mayfield avenue at a point about three and one-half feet north of the north curb on Potomac avenue. After the collision the Burke car swerved over to the northeast corner of the two streets, drove

over the curb onto the sidewalk, smashed the side of the lamp post on the corner, struck plaintiff, and hurled her over the hedge on the premises on the northeast corner and against the front steps of the house located thereon. One of plaintiff's witnesses testified that after she was struck by the automobile "she flew through the air perhaps twenty feet." Another of plaintiff's witnesses testified that "she must have traveled then twenty-five to thirty feet after she was struck." Louis Klow, a witness for plaintiff, testified that the Burke car struck the tree in the parkway with such force that the bumper "was bent almost in a half curve by the contact." The contact with the tree stopped the automobile. After the accident it was found that there was a "chip out of the [cement] lamp post," and that some of the cement was "attached" to "the hood cap of the car." The lamp post was located three and one-half feet from the east curb of Mayfield avenue and about nine feet from the north curb of Potomac avenue, and the tree was located about eighteen feet from the said curb of Potomac avenue. Montez Burke testified that the wheel was knocked out of her hand by the contact, and that she did not apply the brakes on her automobile "after the impact of the two cars." Police officer Burton, assigned to the State's Attorney's office, a witness for plaintiff, testified that he heard the crash, turned around, and saw the Burke car "swerve over towards the north. As it did so it seemed to gain speed. Evidently she must have stepped on the accelerator." After the collision the automobile of appellant came to a stop within the intersection.

Section 68, par. 343, ch. 121, Ill. State Bar Stats. 1935, provides: "Except as hereinafter provided motor vehicles traveling upon public highways shall give the right-of-way to vehicles approaching along intersecting highways from the right and shall have the right-of-way over those approaching from the

left." The Burke car was being driven in an easterly direction, in other words, to the left of the Cohen car, and the latter car, therefore, had the right of way under the statute. (We will hereafter refer to certain decisions that construe section 68.) Appellant contends that the manifest weight of the evidence supports his theory of fact that he reached the intersection before the Burke car reached it; that he proceeded across the intersection with due care and caution, and that plaintiff was injured through no fault on his part. We are satisfied that the manifest weight of the evidence shows that the car of appellant reached the intersection first. Not only the testimony of appellant and his son, a high school student, sustains appellant's theory of fact that he reached the intersection first, but it is also sustained by the testimony of certain witnesses for plaintiff. Fred Fross, testifying for plaintiff, stated that when he first saw the cars the Burke car was fifty feet from the intersection and appellant's car was twenty-five feet from the intersection. Plaintiff testified that she saw the two cars approach the intersection; that the Burke car "was going pretty fast, in my estimation between 35 to 40 miles" an hour; that her impression was that the car of appellant "was going slow"; that she had driven an automobile and her experience enabled her to judge of the speed of a car. While plaintiff was not asked which car reached the intersection first, nevertheless, in view of the place of contact, the reasonable inference to be drawn from her testimony as to the speed of the two cars as they approached the intersection is that appellant reached the intersection first. No witness in the case save Montez Burke testified that her car reached the intersection first. She testified that when she started to cross the intersection appellant's car was about forty to fifty feet back and that the speed of appellant's car at that time was about thirty-five miles an hour. Martha Downey, a witness for plain-

tiff, stated that Mrs. Burke was traveling "pretty fast" at the time of the impact. The witness Fred Fross, whose testimony has heretofore been referred to, also testified that when he saw the Burke car fifty feet west of the intersection it was going "about 30 to 35 miles an hour . . . right up to the time that both cars met. . . . Honestly the east bound car did not slow down at any time it approached the intersection. . . . The north bound car was going just a little bit slower. In other words, he had started to put on his brakes and had slowed up a little." Appellant and his son both testified that as appellant approached the intersection he slowed up a little and then started going again. Appellant testified that he was going about fifteen miles an hour when he entered the intersection; that the Burke car hit the left front fender of his car, tore the front bumper off, and pushed his car to the curb. Montez Burke testified that the right front wheel and fender of her car and the left front fender of appellant's car "came together"; that her car then swung around again and struck the front of appellant's car.

In *Johnson v. Duke*, 247 Ill. App. 372 (opinion by Mr. Justice Jones), the court states (p. 376): "We think the weight of the evidence shows that appellee had entered the intersection before appellant reached the west side of it, and that she was driving at a high and dangerous rate of speed at a place where her view was obstructed. Under the circumstances appellee had the right of way. While this right would not relieve him from the duty of exercising due care, he was entitled to assume that persons approaching on his left would observe the law and respect his right. (*Partridge v. Eberstein*, 225 Ill. App. 209.) The record does not show that appellee was guilty of contributory negligence as claimed by appellant, but on the contrary it shows that he was in the exercise of due care and caution for his own safety and that of his

truck at and prior to the time of the accident. Appellant owed him the duty to approach with sufficient care to permit him to exercise his right of way. (*Partridge v. Eberstein, supra; Zapf v. Kutten*, 229 Ill. App. 406; *McCarthy v. Fadin*, 236 Ill. App. 300; *Fisher v. Johnson*, 238 Ill. App. 25.)''

In *L. B. Piper & Co. v. Yellow Cab Co.*, 246 Ill. App. 487 (opinion by Mr. Justice Wilson), the court states (pp. 490, 491): ''Plaintiff below, in the trial and here, invokes the statute of the state of Illinois to the effect that a person driving over and upon and along a public highway had the right of way, at the intersection, of a street or highway over vehicles approaching on his left, and that a person approaching an intersection should give the right of way to a person approaching said highway on his right. It is true and the courts have so decided, that there are instances where, in spite of the statute, a person approaching an intersecting highway, even though under the statute he would be given the right of way, would, nevertheless, by his conduct, be guilty of contributory negligence if he continues on his way under such circumstances as to constitute contributory negligence. But to say as a matter of law that a person so approaching a highway, in spite of the right granted him by the statute, would be required to stop and give the right of way to another, approaching on his left, under all circumstances, would, in effect, be to nullify the statute and deprive him of the right he might have by reason of its enactment. Moreover, if we should say that he would have no right to rely upon the statute and the rules of the road, then the enacting of such a statute is a useless thing, because no motorist could rely upon it nor could he rely upon the approaching motorist on his left obeying the statute and the rules of the road. In other words, it would put a premium on the action of a person utterly disregarding the relative rights of motorists.''

In *Partridge v. Eberstein,* 225 Ill. App. 209, the court held that while a driver of an automobile which has the right of way is not relieved from the duty of exercising due care, such driver is entitled to assume that the driver of another automobile, approaching on the left, will observe the law and give the right of way to the automobile on the right.

In *Riddle v. Mansager,* 254 Ill. App. 68 (opinion by Mr. JUSTICE JONES), the court states (pp. 73, 74): "The driver approaching from the right has the right of way over one approaching from the left, unless the car on the right is sufficiently far away, so that if being driven with due care, it will not reach the intersection until the car from the left can pass. (*Heidler Hardwood Lumber Co. v. Wilson & Bennett Mfg. Co., supra* [243 Ill. App. 89].) Any other interpretation of the statute would encourage racing to the intersection. It is the purpose of the law to give the driver on the right a preference in passing through the intersection and it is the duty of the driver on the left to respect that right in accordance with the rule herein laid down. A driver on the left owes a duty to the driver on his right to approach an intersection with sufficient care to permit the latter to exercise his right of way. (*Johnson v. Duke,* 247 Ill. App. 372; *Zapf v. Kutten,* 229 Ill. App. 406; *McCarthy v. Fadin,* 236 Ill. App. 300; *Fisher v. Johnson,* 238 Ill. App. 25.) While the right of way does not relieve the one entitled to it from the duty of exercising due care to avoid injuring another, he may assume that persons approaching the intersection on his left will observe the law and respect his right. (*Partridge v. Eberstein,* 225 Ill. App. 209; *Johnson v. Duke, supra.*)"

As tending to prove that the jury did not fairly and impartially consider the evidence in the case appellant strenuously contends that the verdict of the jury finding the Burkes not guilty cannot be justified when all of the evidence is carefully considered. We agree with

this contention. In plaintiff's brief, filed in this court, her counsel states that "the conduct of the defendant, Harry Cohen, in the operation of his automobile was the sole direct and proximate cause of the injuries sustained by the plaintiff." This statement is surprising, indeed, in view of plaintiff's attitude in the trial court. In his closing argument to the jury counsel for plaintiff called the attention of the jury to a number of facts that he contended proved conclusively that Mrs. Burke was driving recklessly before and after the collision. After the jury had returned a verdict finding the Burkes not guilty, plaintiff, in addition to filing a motion for a new trial as to them, filed a "Motion for Judgment Non Obstante Veredicto as to Harry Burke, Defendant," in which plaintiff averred that "under all the evidence in the case, after considering all inferences favorable to defendant, Harry Burke, no ordinary and reasonable man could find from such evidence that . . . the defendant, Montez Burke, was free from negligence in the operation of the automobile by her operated at the time in question, . . . nor other than that except for the negligence of said defendant, Montez Burke, the injuries complained of would not have resulted to the plaintiff." At first blush this motion of plaintiff would seem to be entirely unmeritorious, as Montez Burke testified that she reached the intersection first and proceeded to cross it before appellant reached it, thus making out a *prima facie* defense for the Burkes; but plaintiff, in the trial court, not only contended that the conduct of Montez Burke in entering the intersection, under the circumstances of the case, constituted reckless conduct, but that, assuming that she entered the intersection first, nevertheless, under all the evidence, *including her own,* she was guilty of negligence after the collision, and that but for such negligence plaintiff would not have been injured. Plaintiff, after the trial court had denied her motions as to the Burkes, appealed from the

verdict and judgment finding Montez Burke and Harry Burke not guilty, but for some reason not disclosed by the record plaintiff in this court voluntarily dismissed her appeal as to them. The verdict of the jury as to the Burkes was entirely unwarranted under the evidence. After a careful consideration of all the facts and circumstances in evidence we have reached the conclusion that the verdict as to appellant is against the manifest weight of the evidence. The manifest weight of the evidence clearly shows that appellant had the right of way at the time and place in question and that there was nothing in his conduct that constituted contributory negligence.

The greater part of plaintiff's brief is devoted to an argument in support of the contention that as appellant's motion for a new trial was not preserved in the report of proceedings we cannot review the sufficiency or weight of the evidence. Counsel concedes, as he must, that appellant's motion for a new trial and the order of the court denying the same are included in the common law record, and he further concedes that the trial court passed upon the motion for a new trial, but he contends that even if the motion for a new trial had been properly preserved in the report of proceedings it would be found "that the trial court had not committed error and that the trial court properly refused to grant the motion of the defendant, Harry Cohen, for a new trial." In *Pralle v. Metropolitan Life Ins. Co.*, 252 Ill. App. 460, decided before the enactment of the new Practice Act (opinion by Mr. JUSTICE O'CONNOR), the court states (pp. 467, 468): "Counsel for plaintiff contends that the sufficiency of the evidence to sustain the verdict is not before the court, because 'the bill of exceptions contains no motion for a new trial, order overruling the same, nor objection to such order,' and that it is not sufficient that a recital in the common-law record shows that the motion for a new trial was made and overruled and an excep-

tion taken to such order. Since the amendment of 1911 to section 81 of the Practice Act, Cahill's St. ch. 110, par. 81, it is unnecessary to incorporate a formal exception into the record to preserve the rulings of the trial court for review. *Miller v. Anderson,* 269 Ill. 608. We think the point is not well taken. The judgment order itself obviously is a part of the common-law record and from it, it appears that a motion for a new trial and a motion in arrest of judgment were made and overruled, and we think the court ought not to be so blind as to be unable to see this in the record. In fact we have never seen a record in a court of review where a motion for a new trial and a motion in arrest of judgment were made and overruled, that these facts did not appear in the judgment order. It is and has been the universal practice for a great many years. The clerk of the court writes into the record the orders that are given by the court. The merits of a controversy ought not to be decided on such technicalities." In support of plaintiff's instant contention certain cases are cited, that were decided prior to the passage of the new Civil Practice Act, which have no bearing upon the point in question. Plaintiff also cites subsection (c), Rule 1, sec. (1), Ill. Appellate Court, First District: "The report of the proceedings at the trial consisting of the testimony and rulings of the trial judge and all matters upon which such rulings were made, and other proceedings which the appellant desires to incorporate in the record on appeal, shall be procured by the appellant and submitted to the trial judge or his successor in office for his certificate of correctness, or where this is impossible because of the absence from the district, sickness or other disability of such judge, then to any other judge of said court, and filed in the trial court within 50 days after the appeal has been perfected." Plaintiff fails to cite section (4) of the same rule, which reads as follows: "A claim that any matter in the trial court record

actually before the court on appeal is not properly authenticated may be raised only by motion filed by appellant or appellee before or at the time of filing his brief. Such motions shall be subject to the provisions of Rule 5, and each motion shall be supported by affidavit showing, not only that the matter complained of is not properly authenticated, but that it is in fact incorrect, and that injury will result to the objecting party because of its inclusion. Unless a motion is made in the manner required by this rule, the record shall be deemed to be correct.'' Plaintiff filed no motion in accordance with section (4). Subsection (2), sec. 74, par. 198, ch. 110, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 104.074], reads as follows: ''All distinctions between the common law record, the bill of exceptions and the certificate of evidence, for the purpose of determining what is properly before the reviewing court, are hereby abolished. The trial court record shall include every writ, pleading, motion, order, affidavit and other document filed or entered in the cause and all matters before the trial court which shall be certified as a part of such record by the judge thereof. All matters in the trial court record actually before the court on appeal may be considered by the court for all purposes, but if not properly authenticated the court may order such further authentication as it may deem advisable.'' Paragraph 259.36, ch. 110, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 105.36], provides the general procedure with reference to appeals taken to the Appellate or Supreme Court, and in section (4) it provides: ''A claim that any matter in the trial court record actually before the court on appeal is not properly authenticated may be raised only by motion filed by the appellant or appellee before or at the time of filing his brief. Such motions shall be subject to the provisions of Rule 49, and each motion shall be supported by affidavit showing, not only that the matter complained of is not properly authenticated, but that

it is in fact incorrect, and that injury will result to the objecting party because of its inclusion. Unless a motion is made in the manner required by this rule, the record shall be deemed to be correct." There is no merit in plaintiff's instant contention, and the record before us must be deemed to be correct.

The judgment of the circuit court of Cook county should be and it is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded for a new trial.*

JOHN J. SULLIVAN, P. J., and FRIEND, J., concur.