STROUD, RESPONDENT, *v.* CHICAGO, MILWAUKEE & ST. PAUL RY. Co., APPELLANT.

(No. 5,830.)

HARRIS, RESPONDENT, *v.* CHICAGO, MILWAUKEE & ST. PAUL RY. Co., APPELLANT.

(No. 5,831.)

(Submitted January 12, 1926. Decided February 10, 1926.)

[243 Pac. 1089.]

*Personal Injuries—Automobiles—Railroad Crossing Accident— Negligence Per Se — Contributory Negligence — Proximate Cause of Injury—Icy Approach to Crossing—Presumption of Negligence—Instruction—Proper Refusal.*

Personal Injuries—Automobiles—Railroad Crossing Accident—When Plaintiff not Guilty of Contributory Negligence as Matter of Law.
  1. In an action for damages for injuries sustained in a collision between an autotruck and a locomotive engine at a street crossing,

---

1. Contributory negligence in attempting to use railroad crossing known to be in a dangerous or defective condition, see note in **L. R. A.** 1915C, 813.

Care required of driver of automobile at railroad crossings, see note in 46 **L. R. A. (n. s.)** 702. See, also, 22 **R. C. L.** 1015.

*held,* that where no warning signal of the approach of the engine was given, and the driver of the truck was proceeding with caution and circumspection, diligently looking and listening, driving at such low rate of speed that the truck could be brought to a stop almost instantly and doing everything essential to save himself from injury, he was not guilty of contributory negligence as a matter of law.

Same — Railroads — Failure to Give Statutory Warning of Approaching Train Negligence *Per Se.*
2.   Failure of a railway company to comply with the statute requiring the blowing of the locomotive whistle and sounding of the bell on approaching a street crossing is negligence *per se.*

Same—Proof That Alleged Negligence was Proximate Cause of Injury Essential to Recovery.
3.   Proof of negligence on the part of the defendant is not alone sufficient to establish plaintiff's right to recover damages for injuries sustained, it being incumbent upon him to show that the alleged negligence was the proximate cause of the injuries, *i. e.,* the cause which in a natural and continuous sequence, unbroken by any new, independent cause, produced the injury and without which the injury would not have been sustained.

Same—Icy Condition of Approach to Crossing, and not Failure to Give Warning, *Held* Proximate Cause of Accident.
4.   Where the negligence charged against a railway company was failure of the enginemen to give warning signals in approaching a street crossing, and the evidence showed that the proximate cause of a collision between an autotruck and a locomotive was the icy condition of the planking leading to the crossing which caused the truck to skid forward when the brakes were applied, the court erred in refusing to direct a verdict, in the absence of proof on part of plaintiff showing that if warning signals had been given he would have applied the brakes sooner and thus avoided the collision.

Same—Rule of Two Causes Contributing to Injury for One of Which Neither Party is Responsible *Held* Inapplicable to Case.
5.   The rule that where two causes contribute ₜto an injury, one of which is directly traceable to the defendant's negligence, and for the other of which neither party is responsible, the defendant is liable provided the injury would not have been sustained but for such negligence, *held* inapplicable under the conditions adverted to above. (Par. 4.)

Same—Presumption of Negligence from Happening of Accident—Offered Instruction—Proper Refusal.
6.   Where plaintiff in a personal injury action did not rely upon any presumption of negligence from the mere happening of the accident,

---

2.   Care required to be exercised at railroad crossing, see note in 26 **Am. Rep.** 207.  See, also, 22 **R. C. L.** 999.
3.   Proximate cause and intervening conditions, see note in 1 **Ann. Cas.** 230.
4.   Automobile accidents at railroad crossings, see notes in **Ann. Cas.** 1913B, 680; **Ann. Cas.** 1915B, 767.
5.   See 22 **R. C. L.** 140.

an instruction offered by defendant that the happening of the accident is not evidence of negligence and should not be considered by the jury as indicating negligence was properly refused.

. [1] Railroads, 33 **Cyc.**, p. 1091, n. 55; p. 1121, n. 19.
[2–4] Proximate Cause, 32 **Cyc.**, p. 745, n. 77. Railroads, 33 **Cyc.**, p. 935, n. 22, 23, p. 968, n. 8; p. 1046, n. 36; p. 1067, n. 76; p. 1105, n. 36.
[5]. Negligence, 29 **Cyc.**, p. 498, n. 84.
[6] Negligence, 29 **Cyc.**, p. 643, n. 34. Railroads, 33 **Cyc.**, p. 1011, n. 36, p. 1130, n. 82, 84. Trial, 38 **Cyc.**, p. 1711, n. 19.

*Appeals from District Court, Fallon County; Stanley E. Felt, Judge.*

CONSOLIDATED ACTIONS by Marvin Stroud and by William Harris against the Chicago, Milwaukee & St. Paul Railway Company. From judgments for plaintiffs, defendant appeals. Reversed and remanded, with direction to grant a new trial in each cause.

*Messrs. Murphy & Whitlock* and *Mr. C. J. Dousman,* for Appellant, submitted a brief; *Mr. M. N. Whitlock* argued the cause orally.

From the cases decided by this court and cited below which lay down the rule with reference to the duty of one approaching a railroad crossing, we deduce these principles: First, the physical facts control spoken testimony. Second, that if the occupants of the automobile failed to look or listen or stop if necessary and this failure contributed to bring about the collision they are barred by their contributory negligence. Third, regardless of the testimony as to whether or not the occupants of the automobile looked or listened or stopped, and regardless of whether or not as a matter of fact they took any of these precautions, if the physical facts disclose that had they exercised the precaution they could have seen the approaching train in time to avoid it, still they are barred by their own negligence. (*Hunter* v. *Montana Cent. Ry.,* 22 Mont. 525, 57 Pac. 140; *Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412; *Walters* v. *Chicago, M. & P. S. R.*

*Co.*, 47 Mont. 501, 46 L. R. A. (n. s.) 702, 133 Pac. 357;
*Sherris* v. *Northern Pac. Ry. Co.*, 55 Mont. 189, 175 Pac. 269;
*George* v. *Northern Pac. Ry. Co.*, 59 Mont. 162, 196 Pac. 869;
*Keith* v. *Great Northern Ry. Co.*, 60 Mont. 505, 199 Pac. 718;
*Everett* v. *Hines*, 64 Mont. 244, 208 Pac. 1063; *Normandin* v.
*Payne*, 65 Mont. 543, 212 Pac. 285; *Roberts* v. *Chicago, M. &
St. P. Ry. Co.*, 67 Mont. 472, 479, 216 Pac. 332; *West* v. *Davis*,
71 Mont. 31, 227 Pac. 41.)

It is our contention that the undisputed facts in this case
disclose in the first place that the occupants of the truck in
question did not look at the time when it was important for
them to do so, and in the next place that whether they looked
or not the situation was such that had they looked when in
place of safety they must have seen the train and were there-
fore in a situation where they could have avoided the ac-
cident. We call attention to the following facts in support of
our position.

The icy condition of the crossing in this case is a much
less excuse for plaintiff's conduct than in the ordinary case
for the reason that plaintiffs were so well informed as to
that condition. The general rule is that the condition of
the crossing does not in any way excuse the plaintiff's negli-
gence. The same principle is involved in cases where the ac-
cident occurs at night. The existence of darkness in no way
excuses the traveler. (*Kelly* v. *Director General*, 274 Pa. 470,
118 Atl. 436.) A leading Kansas case makes it clear that the
rough condition of a crossing is no excuse, particularly when
the same is known. (*Reader* v. *Atchison, T. & S. F. Ry. Co.*,
112 Kan. 402, 210 Pac. 1112.) This same point has arisen in
a number of cases where the traveler failed to get across the
tracks by reason of the defective condition of the crossing and
in every instance the courts have held that the contributory
negligence of the traveler is a bar. (*Bunton* v. *Atchison, T.
& S. F. Ry. Co.*, 100 Kan. 165, 163 Pac. 801; *Nichols* v. *Chicago
& A. Ry. Co.* (Mo. App.), 250 S. W. 627.) Numerous cases
have held that the condition of the right of way, whether

known to the plaintiff or not, is a matter for which the defendant cannot be held responsible. (*Kelly* v. *Director General,* 274 Pa. 470, 118 Atl. 436; *Serfas* v. *Lehigh N. E. Ry.,* 270 Pa. 306, 113 Atl. 370; *Gilman* v. *Central Vermont Ry. Co.,* 93 Vt. 340, 16 A. L. R. 1102, 107 Atl. 122.)

*Mr. D. R. Young,* for Respondents, submitted a brief and argued the cause orally.

The icy condition of the crossing on which the accident occurred must be considered as one of the circumstances connected with the happening of the accident, and the fact that this icy condition concurred with defendant's negligence in causing the damage does not relieve defendant from liability. (*Meisner* v. *City of Dillon,* 29 Mont. 116, 74 Pac. 130; *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70; *Freeman* v. *Sand Coulee Coal Co.,* 25 Mont. 194, 64 Pac. 347; *Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481; *Mize* v. *Rocky Mountain Bell Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189, 100 Pac. 971.)

In order to find a plaintiff guilty of contributory negligence as a matter of law, the facts must be such that reasonable men can reach no other conclusion than that the plaintiff was negligent and that such negligence was the proximate cause of the injury. (*Haney* v. *Mutual Creamery Co.,* 67 Mont. 278, 215 Pac. 656; *Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412; *Walters* v. *Chicago, M. & St. P. R. R. Co.,* 47 Mont. 501, 46 L. R. A. (n. s.) 702, 133 Pac. 357; *Sherris* v. *Northern Pac. Ry. Co.,* 55 Mont. 189, 175 Pac. 269; *Everett* v. *Hines,* 64 Mont. 244, 208 Pac. 1063; *Bilton* v. *Southern Pac. R. R. Co.,* 148 Cal. 443, 449, 83 Pac. 440, 443.)

We contend that even in the absence of the icy condition of the crossing as affecting this case, the defendant was liable. The question of contributory negligence was a proper question for the jury and their decision should not be disturbed. (22 R. C. L. 1027; *Puckett* v. *Sherman & Reed,* 62 Mont. 395,

205 Pac. 250; *Haney* v. *Mutual Creamery Co.*, 67 Mont. 278, 215 Pac. 656.)

The defendant appears to be attempting to invoke the ruling obtaining in some jurisdictions that the traveler must stop in addition to looking and listening before entering upon a crossing. However, this ruling has been rejected by the courts and our court has held that a person attempting to cross a railroad crossing is simply held to the degree of care which a reasonable man should exercise under the circumstances of the particular case. (33 Cyc. 1000, 1003; 22 R. C. L. 1039; *Everett* v. *Hines,* 64 Mont. 244, 208 Pac. 1063; *Haney* v. *Mutual Creamery Co., supra.*)

MR. JUSTICE STARK delivered the opinion of the court.

The above actions arose out of a collision between a Nash truck and a locomotive engine hauling a west-bound freight train of the defendant company, which occurred at what is known as the Main Street crossing in Baker, Montana. The truck in question belonged to the plaintiff Stroud. It had a four-wheel drive, four-wheel brakes, the front wheels equipped with chains, and was used by the plaintiff Stroud in trucking and hauling timbers. At the time in question he was employed about the business of the plaintiff Harris. Stroud brought this action for damages to the truck, and Harris brought his action to recover for personal injuries sustained by him.

Except as to the damages claimed, the issues in the two cases were the same, and by stipulation they were tried together in the lower court. In each case the negligence charged against the defendant was the failure to blow the whistle or sound the bell of the locomotive in accordance with the provisions of section 6521, Revised Codes of 1921, as the train approached the crossing.

The answers denied generally the negligence alleged in the complaints, and set up, as affirmative defenses, contributory negligence on the part of the plaintiff in each case. The cases

were tried to a jury. At the close of all the evidence, defendant moved for a directed verdict in each case, which was denied. The jury returned a verdict in favor of the plaintiff in each case, upon which judgments were entered. After defendant's motions for new trials had been overruled, it appealed from the judgments, and the appeals have been consolidated.

Stated in the light most favorable to plaintiffs' contentions where they are in dispute, the facts disclosed in the record are: Main Street of the city of Baker runs north and south, and is 100 feet in width between the sidewalks which extend along either side. The main line track of defendant's railway crosses this street, running approximately east and west. Immediately north of the main line track, and parallel therewith, are three other tracks which are designated, successively, the passing track, the team track and the house track. The distance from center to center of these tracks is as follows: Main line track to passing track 15' 2", passing track to team track 16' 7", team track to house track 2' 7". The portion of Main Street across these tracks, used as a driveway, is planked. Just north of the house track and east from Main Street there are numerous buildings and structures which cut off a view of the tracks from one approaching Main Street from the east, until he reaches a point near the sidewalk. At the time in question there were some box-cars standing on the house track about ―― feet east of the crossing, and also a string of box-cars standing on the team track, extending east for a considerable distance, the first one of which was about six or eight feet east of the Main Street sidewalk. These cars further obstructed the view of the main track from one crossing from the north until he had gone far enough south to permit his line of vision to pass the southwest corner of the box-car nearest the sidewalk. Plaintiff Harris lived one-half block north of the tracks and one block east of Main Street.

Shortly after 8 o'clock on the morning of January 12, 1924, the two plaintiffs riding on the truck, with Stroud driving, started from the Harris home to cross over to the south side of defendant's tracks. In doing so they proceeded southwesterly until they reached the east line of Main Street, when they turned to the south, and, entering upon the planked portion thereof, continued in a southerly direction. Both plaintiffs were possessed of good eyesight and hearing. At all times after starting from the Harris house they were both diligent in looking and listening for approaching trains. Neither of them heard a whistle blow or a bell ring, and did not see the west-bound freight train approaching until they reached a point about the middle of the team track. At about this time Harris saw the train and shouted to Stroud, "Hold 'er!" whereupon both plaintiffs reached for the emergency brake, which Stroud set, locking the wheels. At that time the clear distance between the front, end of the truck and the point of impact with the locomotive was seventeen feet. When the train came into view, the truck was traveling at the rate of two or three miles per hour, according to Stroud, and at four and one-half miles per hour, according to Harris. The speed of the train was estimated by different witnesses at ten, twelve and twenty-five miles per hour. Harris testified that under normal conditions, setting the brakes so as to lock the wheels would stop the truck "right now," and Stroud said it would have stopped it within a foot or two. The planking was icy and slippery. When the brakes were applied so as to lock its wheels, instead of stopping "right now" or "within a foot or two," the truck skidded forward for a distance of seven to ten and one-half feet, and, when it was "practically at a complete stop," collided with the side of the locomotive near its front end, causing the injuries complained of. Both plaintiffs were familiar with the crossing and knew of its condition. Stroud had driven the truck over it within half an hour before the accident. As the train approached the crossing, it was running down a slight grade; the loco-

motive was making little noise, and was not emitting smoke or steam.

Defendant's first specification of error is that the court erred in overruling its motion for a directed verdict in each case, and specifications 3 and 4 are to the effect that the court erred in overruling its motions for new trials on the ground that the evidence was insufficient to justify the verdict, and that it was against the law. These specifications will all be considered together, and may be disposed of in determining (1) whether the testimony showed that the plaintiffs themselves were guilty of negligence which contributed to bringing about the collision and resultant damage, and (2) whether the testimony showed that the injuries and damages sustained by plaintiffs were proximately caused by the negligence alleged in the complaint.

1. An examination of the testimony fails to convince us [1] that it shows the plaintiffs were guilty of contributory negligence as a matter of law. They were on a public highway, where they had a right to be. The testimony tends to show that they were proceeding with due caution and circumspection; that they were diligently looking and listening for approaching danger; that the truck was traveling at such a low rate of speed that it could be brought to a stop almost instantly; and that they did everything essential to have saved themselves from injury under ordinary normal conditions.

The length of the truck was twenty-one and one-half feet. A mere mathematical computation demonstrates that, from the time plaintiffs crossed the north rail of the house track, which was about thirty-eight feet from the point where their line of vision would pass the line of box-cars on the team track, there was no place where they could have stopped the truck to go ahead and see whether a train was approaching on the main track from the east, without leaving the truck in a position where it would be struck by moving cars on either the home track or the team track.

75 Mont.]     Stroud *v.* Chicago etc. Ry. Co.     393

[75 Mont. 384.]

The testimony was sufficient to warrant a finding that plaintiffs had not been advised of the oncoming train in the manner in which the law requires that they should be warned.

The weakness of the plaintiffs' case is that they failed to [2–4] introduce testimony which would have warranted a finding that, if they had been warned, they would have taken earlier steps to have avoided the collision by sooner applying the brakes, or not entering upon the crossing until after the train had passed. Instead of making this essential showing, the testimony in the record leads inevitably to the conclusion that the proximate cause of the collision was the icy and slippery condition of the planking on the crossing, which caused the truck to skid forward until it collided with the locomotive. The defendant was not responsible for the condition of the crossing; it did not know of its condition, and was not chargeable with knowledge thereof.

Failure of the defendant to comply with the statute requiring the blowing of the whistle and sounding of the bell on approaching the crossing was negligence *per se.* (*Hunter* v. *Montana C. Ry. Co.,* 22 Mont. 525, 57 Pac. 140; *De Atley* v. *Northern Pac. Ry. Co.,* 42 Mont. 224, 112 Pac. 76.) But the mere fact that defendant was proven negligent did not establish plaintiffs' right to recover. They were required to go further and show that the defendant's alleged negligence was the proximate cause of the injuries which they received. (*Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 119, 101 Pac. 243.) This proximate cause has many times been defined by this court to be one "which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred." (*Mize* v. *Rocky Mt. Bell Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189, 100 Pac. 971.)

These rules are so elementary that no citation of authorities should be required to support them; for, as said by Mr. Justice Sanner in *Westlake* v. *Keating Gold Min. Co.,* 48

Mont. 120, 136 Pac. 38: "It is a rule so fundamental as to be axiomatic * * * that before negligence, however established, can become a basis for recovery, causal connection must be shown between it and the injury complained of."

The rules defining the duty of one traveling on a highway and approaching a railroad crossing have been considered and declared by this court in a large number of cases, from *Hunter* v. *Montana C. Ry. Co., supra,* down to *West* v. *Davis,* 71 Mont. 31, 227 Pac. 41, but none of these cases has presented the proposition involved in this one.

In *Barrett* v. *United States R. R. Adm.,* 196 Iowa, 1143, 194 N. W. 222, the facts were that the driver of an automobile, exercising due care, approached a railway crossing with her machine under such control as to be prepared to stop instantly, and, upon discovering an approaching train which had failed to give warning by blowing the whistle and ringing the bell as required by statute, successfully applied the brakes, but, owing to the presence of ice and snow on the highway, the automobile skidded into contact with the train. It was held that the skidding of the automobile, and not the failure to give the statutory crossing signals, was the proximate cause of the collision; it further appearing that the record would not support a finding that the driver would have applied the brakes sooner had the signals been given, and judgment in favor of the plaintiff was reversed.

Another case of similar import is *Hickey* v. *Missouri Pac. R. R.* (C. C. A.), 8 Fed. (2d.) 128, wherein it was held that the railroad company's negligent failure to give statutory crossing signals was not the proximate cause of a collision with an automobile at a highway crossing, when the driver of the machine was unable to stop the same in time to avoid a collision by reason of ice on the highway, and that there was no liability on the part of the railway company, where there was no testimony showing how far from the place of collision the driver of the automobile would have tried to stop if he had heard any signals from the approaching train.

Under the reasoning of the foregoing cases, which appeals to us as being correct, and upon the record before us, the conclusion seems inevitable that the evidence fails to show a causal connection between the defendant's failure to give the crossing signals and the collision of the truck with the locomotive, for which reason the plaintiffs failed to prove the negligence alleged in their complaint, and the court should have sustained defendant's motions for directed verdicts, and erred in not granting the motions for new trials on that ground.

While counsel for plaintiffs concede that the collision was [5] occasioned by the icy and slippery condition of the crossing which caused the truck to skid, he contends that there was nothing about the icy crossing which would have made it dangerous in the absence of the defendant's negligence, that it was a condition for which neither party was responsible, and he invokes the rule laid down in *Meisner* v. *City of Dillon,* 29 Mont. 116, 74 Pac. 130: "Where two causes contribute to an injury, one of which is directly traceable to the defendant's negligence, and for the other of which neither party is responsible, the defendant will be held liable, provided the injury would not have been sustained but for such negligence." But this rule has no application to the facts in this case, because, as above pointed out, there is nothing to show that the alleged negligent act of the defendant in failing to give the crossing signals in any way influenced the plaintiffs' actions; so it cannot be said on this record that "the injury would not have been sustained but for such negligence."

Defendant specifies as error the rulings of the court in re- [6] fusing to give to the jury certain instructions offered by it, designated as D-1, D-4, D-6 and D-9. Offered instruction D-1, after stating that the burden was upon the plaintiffs to prove the negligence alleged in their complaints, and that such negligence resulted in damage to them, continued: "The happening of the accident is no evidence of

negligence, and shall not be considered by you as indicating negligence.'' The court struck out the portion quoted, and gave the instruction as thus modified. The action of the court was right. The portion stricken was not at all applicable to the facts, since plaintiffs had not claimed any presumption of negligence from the mere happening of the accident. While defendant's exception only went to the action of the court in striking from the offered instruction the part above quoted, the instruction as given was objectionable, in that it failed to point out that the negligence proved must have been the proximate cause of the damage sustained, in order to entitle plaintiff to recover.

Offered instruction D–6 was sufficiently covered by the court's instruction No. X; while offered instructions D–7 and D–9 were in effect peremptory directions to the jury to return verdicts in favor of the defendant on the ground that plaintiffs were guilty of contributory negligence. There was no error in the court's refusal to give these instructions.

Offered instruction D–4 was objectionable by reason of the uncertainty as to the antecedent of the pronoun ''this'' as used therein. However, the jury should have been given the substance thereof. This could have been accomplished by inserting, after the sentence, ''It is not always sufficient if he looks and listens,'' in the court's instruction IX, the following, ''If the circumstances require it, it is his duty to stop in order to make such looking and listening effective.''

The judgments are reversed and the causes remanded to the district court, with directions to grant the defendant's motions for new trials.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.

Rehearing denied February 27, 1926.