Ruth Berg, Conservator of Estate of William Berg, Incompetent, Appellee, v. New York Central Railroad Company, Appellant.

Gen. No. 9,415.

222

Opinion filed May 24, 1944.

HENRY I. GREEN and ORIS BARTH, both of Urbana, for appellant.

C. E. TATE and E. G. MATHIS, both of Champaign, for appellee.

MR. PRESIDING JUSTICE DADY delivered the opinion of the court.

This is a personal injury suit brought by the conservator of William Berg, an incompetent person, against the defendant appellant, for injuries received

by Berg as a result of a collision between a passenger train of defendant and an automobile in which Berg was riding as a passenger. There was a verdict and judgment against defendant. Defendant appeals.

After the return of the verdict, the defendant moved for judgment for defendant notwithstanding the verdict, and, in the alternative, that a new trial be ordered.

The trial judge, at the time of the entry of judgment, filed and delivered a written opinion which, so far as material, stated: ". . . So far, only the motion for judgment notwithstanding the verdict has been argued, and that is the motion which will now be passed upon. . . . the motion of the defendant for judgment notwithstanding the verdict will be denied. No argument has been made . . . on the motion for new trial, and if the defendant's counsel desire to be heard upon that motion, the court will be glad to hear and consider such argument." The attorney for the defendant then stated: ". . . we don't care to argue the motion for new trial, . . . and we do not care to be heard on the motion for new trial." The trial judge then said: "All right, enter the following orders:—Defendant's motion for judgment notwithstanding verdict overruled. Motion for new trial overruled. Judgment on verdict in favor of the plaintiff and against the defendant . . . ."

In *Helton v. Thomson,* 311 Ill. App. 354, 366, the court said: "The current rule undoubtedly is that a motion for a new trial may be so waived by abandonment in the court below as properly to foreclose the Appellate Court from examining the propositions on which it is based, but each case rests upon the particular circumstances indicating whether or not a waiver may be presumed. . . . If the trial judge had desired an oral argument, and so indicated, defendant's counsel would undoubtedly have been called upon to comply with the court's request, or if he had refused to

do so the court might have construed the refusal as an abandonment of the motion.'' (See also *Calumet Furniture Co. v. Reinhold,* 51 Ill. App. 323; *Firemen's Ins. Co. v. Horton,* 68 Ill. App. 497; *Eckels v. Hawkinson,* 138 Ill. App. 627.)

From such authorities it is our opinion that the defendant is not in a position to complain of the denial of the motion for a new trial.

The only other contention of the defendant is that its motion for judgment notwithstanding the verdict should have been allowed on four grounds, *viz:* (1) that the uncontradicted evidence established that Berg, and Graves who was driving the automobile, were engaged in a joint enterprise, both were negligent and the negligence of either was the negligence of the other; (2) that there is no evidence tending to prove that Berg was in the exercise of due care for his own safety either at or prior to the time of the collision; (3) that there is no evidence showing or tending to show the defendant guilty of negligence as charged; (4) and that the proximate cause of the accident was the icy condition of Third Street and the automobile skidding thereon.

In passing on a motion for judgment notwithstanding the verdict the rules applicable on a motion for a directed verdict should be applied. The evidence must be considered in its aspect most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom, and the court is required to assume that the evidence favorable to the plaintiff is true. The evidence must not be weighed and all contradictory or explanatory circumstances must be rejected. The only inquiry is whether there is any evidence fairly tending to prove the plaintiff's complaint. If there is any evidence fairly tending to prove the complaint, the motion must be denied, even though the court is of the opinion that a verdict for the plaintiff,

if given, must be set aside as against the preponderance of the evidence. (*Synwolt v. Klank,* 296 Ill. App. 79; *Hunter v. Troup,* 315 Ill. 293; *Osborn v. Leuffgen,* 312 Ill. App. 251.)

Following such rules of law, we will discuss and consider only the undisputed evidence and the evidence favorable to the plaintiff.

On February 11, 1942, William Berg, Murray Williams, and Earl Fancher and wife, at the invitation of Ernest Graves, rode from St. Joseph to Urbana in an automobile owned and driven by Graves. In Urbana they were joined by Don Gaylord. The five men lived in or near St. Joseph and went to Urbana to participate in a bowling contest with other teams. They bowled from about 9:00 p. m. to about 11:30 p. m. Berg, Williams and Fancher and wife were then driven back to St. Joseph by Graves, in the Graves automobile, Berg sitting on the back seat. On returning to St. Joseph, Fancher and wife were the first to get out of the Graves car. Graves then drove Williams to the latter's home. Thereupon, and while Berg was still sitting alone on such rear seat, Graves drove south on Third Street and onto the railroad crossing, for the purpose of taking Berg to Berg's home. The passenger train of the defendant, traveling about 60 miles per hour in an easterly direction on the southerly or main line track, then struck the automobile on the rear right hand side, causing the injuries complained of. The accident occurred about 12:18 a. m. Both Graves and Berg lived in the neighborhood of and were familiar with the crossing.

At and near the place of the accident the railroad tracks ran east and west, and across Third Street at right angles. There were two sets of parallel tracks, a few feet apart, the southerly set being the main line track, and the northerly set being a side or passing track. The only crossing warning signals were two

stationary "cross-buck" signs, one at the northwest corner of the crossing, and one at the southwest corner.

A poultry house was located 63 feet west of the center of Third Street and 104 feet north of the north rail of the main track, the base dimensions of which were 26 x 24 feet. Westerly of Third Street there was located the foundation and walls of a burned elevator, which structure was about 18 feet north of the north rail of the main track. Its base dimensions were 32 x 36 feet, and its height about 9 or 10 feet. The reply brief of the defendant states that: "the plat and photographs show that the first clear view they (Berg and Graves) had for any distance to the west was as they passed the poultry house going south at a point at least 100 feet north of the main track."

George Rutledge testified that on February 10th weeds as high as from 12 to 14 feet were growing on the westerly side of the crossing. Mrs. Rutledge testified without objection that "as you came from the north to the crossing it was practically impossible to see clearly until you were almost upon the tracks," because of the weeds which were thick and from 6 to 7 feet high, and that the concrete foundation also obstructed the view. William Besore testified that on February 11th there were weeds on the right of way, on the westerly side of the crossing, about shoulder high, and that one would have to get within 10 feet of the track before he could see down the track. Mrs. Besore testified that she saw the weeds after the accident and they were shoulder high.

George Rutledge testified that he lived about 50 feet south of the crossing; that on the night of the accident after he had been in bed about ten minutes he heard the rumble of the train and the crash of the collision, but heard no whistle or bell although he said he was in a position to have heard one. Mrs. Rutledge testified that she had just gone upstairs when she

heard the rumble of the train and the crash, but heard no whistle or bell, although she said she was in a position to have heard one.

William Berg was unable to testify because of a mental condition resulting from the injuries which he received in the accident.

Ernest Graves was in the military service at the time of the trial. By agreement there was read in evidence a statement made by Graves on February 14, 1942, to a claim agent of the defendant.

The statement of Graves was in substance as follows: That after all except Berg had left the automobile, Graves, in taking Berg to the latter's home, drove south on Third Street, with Berg sitting alone in the rear seat; as he approached the crossing his view to his right or westerly was obstructed by the poultry house; he had just passed the poultry house when "we saw the train" coming at exactly the same time, and Berg said "here she comes," or "there's a train"; he at once applied his brakes but the road was slick with ice and the automobile kept sliding on; that he tried to turn to the west to keep out of the way of the train but the car kept sliding; at that time, as near as he could see, the front wheels of his car were about on the side track north of the main track and the train was a few feet away; he then "gunned" his car, and tried to clear the crossing, but the train hit his automobile at about the rear wheels; it was not snowing, but there was snow on the ground and on the roads, and the roads were slick on both sides of the crossing; the windows of the car were closed; he, Graves, could see all right through the front windows of the car, but couldn't say about the back windows; as he approached the crossing he was traveling between 20 and 25 miles an hour and twice looked for trains; he looked both east and west for trains within 40 feet of the place of the accident and did not see any, and within the next 5 or 6 feet saw the train coming around

the elevator abutment; Berg was looking too, and "We both seen it"; he did not hear the train whistle, and did not hear the engine bell ring; he would not know whether the bell could have been ringing and he not have noticed it, and would not have known whether the engine could have been whistling and he not have heard it.

The statement of Graves shows that, after making the foregoing statement, he and the claim agent then went to the crossing, where they took measurements and Graves then said: "we" first looked for a train before reaching the poultry house, but did not see any train; he first saw the train when he was about 76 feet north of the main track and when the train was about 182 feet west of the crossing and nearly at the elevator abutment; he then applied the brakes but skidded about 30 feet to a point about 30 feet north of the main track, and then knew he could not turn or stop and proceeded to "gun" the car across the tracks.

The testimony shows or tends to show that the slippery and icy condition of roads was a general condition that was known or should have been known by Graves and Berg, and by the engineer on the locomotive.

Murray Williams, who was the last to leave the automobile before the accident, testified that on getting out of the automobile at his home on Third Street, he immediately went into his back yard and then heard the rumble of the train, and while still hearing such rumble went into the house; that he heard no whistle or bell, but was in a position to hear one if same had been sounded.

Williams further testified that with good traction the automobile could have been stopped in 10 feet while going 20 miles an hour, and within 15 feet while going 25 miles per hour; and that on the trip to and from Urbana he saw Graves stop his car probably a dozen times and each time the car stopped quickly.

This was the only evidence tending to show in what distance the car could have been stopped while traveling at any rate of speed.

There is no merit to the contention that Berg and Graves were engaged in a joint enterprise, and that the negligence, if any, of Graves can be imputed to Berg. The undisputed evidence is that Berg rode merely as a passenger or guest at the invitation of Graves, and did not pay or contribute anything of value for being conveyed. There was no evidence showing or tending to show a common right of possession or control of the car. The trip, including the bowling, was merely for pleasure and in our opinion did not constitute any joint enterprise.. (See *Fisher v. Johnson,* 238 Ill. App. 25.) The negligence, if any, of Graves cannot be imputed to Berg, for there is no evidence tending to indicate that Berg could control or direct the movements of the automobile. (See *Nonn v. Chicago City Ry. Co.,* 232 Ill. 378.) Under such circumstances the negligence, if any, of Graves would not excuse the defendant for negligently injuring Berg, provided Berg was without negligence on his part. (See *Taylor v. Alton & Eastern R. Co.,* 258 Ill. App. 293.)

We are unable to agree with the contention of the defendant that there is no evidence, which, taken with all reasonable intendments in favor of Berg, tends to prove that at and immediately prior to the accident he was exercising reasonable care for his own safety. It must be borne in mind that Berg was seated in the rear of the automobile, that there is no evidence tending to show whether the rear windows in the car were clear or frosted, and that Berg was obviously not in as good a position as was Graves to see the approaching train. Graves says that as soon as they (Berg and Graves) saw the train, Berg warned Graves by saying "here she comes," or by saying "there's a train." Berg, because of his mental condition, was unable to

testify as to what he said or did immediately before the accident. Berg, having ridden for several miles in the car driven by Graves, might reasonably have supposed that Graves was familiar with the condition of the road and the braking power of his car, and would stop the car in time to avoid a collision, and when Berg realized that Graves was going to attempt to cross ahead of the train, what could, or should, he have done? Who can say now as a matter of law? Cry out? He might have thus confused and disconcerted Graves, the driver, and an instant of indecision in such a case might be fatal. There was no time to reflect or reason. (See *Southern Pac. Co. v. Wright,* 248 Fed. 261, 264, approved in *Miller v. Union Pac. R. Co.,* 290 U. S. 227, 54 Sup. Ct. 172.) In *Smith v. Courtney,* 281 Ill. App. 530, the court, per Justice MURPHY, said: ''The question of contributory negligence is ordinarily one of fact for the jury, which must be determined from all the facts and circumstances surrounding the injury. It is a question of law for the court to determine whether under the facts and circumstances of each particular case there is any evidence tending to prove due care, and if there is such, then the case should be submitted to the jury and the court cannot say, as a matter of law, that the plaintiff has been guilty of such contributory negligence as to bar the right of recovery.'' In *Stack v. East St. Louis & Suburban Ry. Co.,* 245 Ill. 308, 310, the court said: ''There is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger. In the variety of circumstances which constantly arise it is impossible to announce such a rule. . The only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances.'' In *Fisher v. Johnson,* 238 Ill. App. 25, the plaintiff, a passenger, was unable to testify because of retrograde amnesia.

There was no direct evidence as to what he said or did immediately before the accident. Although the driver of his car was held negligent, the court said: "As a guest . . . . having no control over the car or its management, he was not called upon to exercise care for himself by any affirmative act unless it was to caution" the driver "of any danger he had an opportunity to discover in the position in which he was placed." Direct evidence of due care is not necessary. There may be circumstances from which it can be assumed. (See *Elgin, J. & E. Ry. Co. v. Hoadley,* 220 Ill. 462.) The fact that the plaintiff, a passenger, did not do or say anything, does not show contributory negligence as a matter of law. (See *Rhoden v. Peoria Creamery Co.,* 278 Ill. App. 452; *St. Clair Nat. Bank of Belleville v. Monaghan,* 256 Ill. App. 471; *Smith v. Courtney,* 281 Ill. App. 530.)

The specific negligence charged was that the train was driven at a high rate of speed without any warning of its approach by causing a bell to be rung or a whistle to be sounded as required by statute. It will be noted that the train was traveling at 60 miles per hour and that there was competent evidence tending to show that the whistle was not blown and that the bell was not rung. In passing on the motion for a judgment notwithstanding the verdict the trial court was bound to take this evidence as true. (*Krieger v. Aurora E. & C. R. Co.,* 242 Ill. 544.) We believe this evidence fairly tended to show the specific negligence charged.

The next and what we consider the most serious question is whether there is any evidence fairly tending to show that the alleged failure to give any warning of the approach of the train by sounding the whistle or ringing the bell was the proximate cause of the accident. Defendant contends that the sole proximate cause of the accident was the icy condition of the street and the automobile skidding thereon.

On the question of proximate cause, there are two conflicting lines of outside authorities in which the facts are quite similar to the facts in the instant case. Decisions favorable to the defendant are *Barrett v. U. S. Railroad Administration,* 196 Iowa 1143, 194 N. W. 222; *Pifer v. Chicago M., St. P. & P. R. Co.,* 215 Iowa 1258, 247 N. W. 625; *Davis v. Pere Marquette Ry. Co.,* 241 Mich. 166, 216 N. W. 424; *Megan v. Stevens,* 91 F. (2d) 419; *Hickey v. Missouri Pac. R. Corp.,* 8 F. (2d) 128; *Stroud v. Chicago M. & St. P. Ry. Co.,* 75 Mont. 384, 243 Pac. 1089; and *Kramers v. Chesapeake & O. Ry. Co.,* 60 Ohio App. 556, 22 N. E. (2d) 227. Decisions favorable to the plaintiff are *Saeugling v. Scandrett,* 230 Iowa 153, 296 N. W. 787; *Sisk v. Chicago B. & Q. R. Co.* (Mo. App.), 67 S. W. (2d) 830; *Williams v. Thompson* (Mo. App.), 166 S. W. (2d) 785, and *Miller v. Union Pac. R. Co.,* 290 U. S. 227, 54 Sup. Ct. 172. The fact that the later Iowa case of *Saeugling v. Scandrett* apparently conflicts with the two earlier Iowa cases above cited, and the fact that in the *Megan* case there was what we consider a strong dissenting opinion, also indicates the question is a close one.

Some of the cases favorable to the defendant hold that under such circumstances the jury should not be permitted to and could not properly assume that if the requisite signal had been given by the engineer on the locomotive, the driver of the automobile would have heard such signal and would have stopped or attempted to stop his car farther from the place of danger, and hold that to permit the jury to determine the question of proximate cause under such circumstances would be to allow the jury to enter into the field of speculation and adventure.

Some of the cases favorable to the defendant hold that the driver of the automobile had the right to assume that the requisite signal would be given, and that the jury might reasonably infer that if such signal had been given it would have been heard, and being

heard the driver of the automobile would have stopped or have attempted to stop out of the zone of danger.

The only Illinois case called to our attention in which we consider the facts somewhat similar is *Moudy v. New York, C. & St. L. R. Co.*, 385 Ill. 446, in which case our Supreme Court reversed a decision of this Appellate Court reported in 317 Ill. App. 154. In the *Moudy* case the plaintiff first heard the approaching train when he was about 50 feet from the crossing. He was then driving his automobile at a speed of 22 to 25 miles per hour. He immediately applied his brakes to the full extent, but his automobile slid forward about 60 feet and into the side of the passing locomotive. There was evidence tending to show that the automobile brakes although recently repaired were defective, and evidence tending to show that no whistle was blown or bell sounded on the locomotive as it approached the crossing.

In the *Moudy* case our Supreme Court said: "We have frequently held that, in order for a plaintiff to recover, the defendant's negligence must have proximately caused, or contributed to cause, the injuries, rather than merely causing a condition providing an opportunity for other causal agencies to act. (*Merlo v. Public Service Co.*, 381 Ill. 300; *Briske v. Village of Burnham*, 379 Ill. 193; *Illinois Cent. R. Co. v. Oswald*, 338 Ill. 270.) In the *Merlo* case we said: 'The test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence.' It would be an extreme application of the law to require a railroad company operating its trains on fixed tracks, and required by the exigencies of commerce to move its passengers and commodities rapidly, to anticipate (at every grade crossing) there might be defective brakes upon every automobile approaching a crossing, which would re-

lieve the driver of the exercise of due care, and make the railroad company liable, when not its negligence, but the traveler's lack of due care, caused the accident. The distinction between a crossing accident occurring from lack of due care upon the part of the plaintiff, or because of an intervening cause under his control, or at least not under the control of the defendant, is so slight as to make rules applicable to them practically the same. We are of the opinion that the evidence in this case most favorable to the plaintiff fails to show that he was in the exercise of due care, or that the alleged negligence of the defendant was the proximate cause of the accident. Under such circumstances, as a matter of law, the plaintiff is not entitled to recover."

A pertinent similarity in the facts in the *Moudy* case and in the instant case is that in the *Moudy* case the automobile evidently slid forward and into the train, not only because of the momentum of the automobile but also because of its defective brakes, while in the instant case the automobile was evidently unable to be stopped before reaching the danger zone, not only because of its momentum but also because of the slippery condition of the road.

A distinction between the facts in the *Moudy* case and in the case at bar is that in the *Moudy* case the plaintiff was driving the automobile, while in the present case the plaintiff was merely a passenger or guest. There is the further distinction that in the *Moudy* case the Supreme Court found as a matter of law that the evidence failed to show that the plaintiff was in the exercise of due care for his own safety, while in the instant case we are holding that there was evidence tending to show due care on the part of the plaintiff for his own safety. It will be noted, however, that in the *Moudy* case the Supreme Court also found, as a matter of law, that the evidence did not show that the alleged failure of defendant to give the required signal was the proximate cause of the accident.

In view of the particular facts in the case at bar, and in view of the holding of our Supreme Court in the *Moudy* case, we feel required to and do hold that the evidence most favorable to the plaintiff does not show or tend to show that the alleged negligence of the defendant in failing to give any warning signal of the approach of the train was the proximate cause of the accident, and that therefore the plaintiff is not entitled to any recovery.

Therefore the trial court erred in not allowing the motion for judgment in favor of the defendant notwithstanding the verdict.

It is ordered that the judgment of the trial court be and the same is reversed.

*Reversed.*