(No. 28179.—

Ruth Berg, Conservatrix, Appellant, *vs.* The New York Central Railroad Company, Appellee.

*Opinion filed September 19, 1945.*

54

C. E. Tate, and E. G. Mathis, both of Champaign, · for appellant.

Henry I. Green, and Oris Barth, both of Urbana, (Samuel W. Baxter, and Charles P. Stewart, both of Cincinnati, Ohio, of counsel,) for appellee.

Mr. Justice Murphy delivered the opinion of the court:

Plaintiff, Ruth Berg, conservatrix of the estate of William Berg, an incompetent, started this suit in the circuit court of Champaign county to recover damages for personal injuries sustained by her ward when the automobile in which he was riding was struck by defendant's passenger train. A trial by jury resulted in a verdict and judgment for plaintiff. On appeal, the Appellate Court reversed the judgment without remanding, (323 Ill. App. 221,) and granted a certificate of importance pursuant to which the cause comes to this court for further review.

A ruling on defendant's motion for a directed verdict made at the close of all the evidence was reserved in accord with paragraph (3)a of section 68 of the Civil Practice Act. (Ill. Rev. Stat. 1943, chap. 110, par. 192.) After a verdict was returned, defendant renewed its request for a directed verdict by filing a written motion. An alternative motion for a new trial was also filed. A hear-

ing was had on the motion for judgment *non obstante vere-dicto* and the court rendered an opinion overruling the same. Defendant's counsel were then asked if they desired to be heard upon the motion for a new trial, to which they replied that they did not care to argue such motion. An order was made overruling both motions and judgment was entered on the verdict. On appeal, the Appellate Court concluded that the records showed that defendant had waived the grounds urged in its motion for a new trial. No exceptions have been taken on this appeal to the Appellate Court's conclusions on that point. The inquiry is therefore limited to the questions of law raised by a motion for judgment *non obstante veredicto.*

The negligence charged in the complaint was that the train which collided with the automobile, in which plaintiff's ward was riding, was driven to and across a grade crossing at a rate of speed, to-wit, 70 miles per hour, without sounding a bell or blowing a whistle. The second count charged the violation of section 6 of the act relating to operation of railroads (Ill. Rev. Stat. 1943, chap. 114, par. 59,) which requires the ringing of a bell or the blowing of a whistle for public highway crossings.

The evidence shows that on the evening of February 10, 1942, William Berg, Ernest Graves, Murray Williams and Mr. and Mrs. Earl Fancher, went in Graves's automobile from St. Joseph to Urbana, to attend a bowling tournament. Graves drove his automobile, and after they returned to St. Joseph, about midnight, he proceeded to take the Fanchers, Williams, and Berg to their respective destinations. While enroute to Berg's home the accident occurred.

The trip to Urbana and return was made over State Route 10, which, for the greater part of the distance of approximately nine miles, parallels defendant's right of way. In St. Joseph, the State route intersects a north and south thoroughfare, known as Third street. Defendant's

tracks, one the main line, the other a passing track, also cross Third street at right angles at a point approximately 370 feet south of the State route intersection. Graves drove the automobile south on Third street in the direction of Berg's home, which was south of the railroad tracks. He stopped at the State route intersection, proceeded across it in low gear, and then south toward the railroad crossing at a speed of 20 to 25 miles per hour. Berg was riding in the rear seat.

When the automobile party left Urbana, defendant's passenger train was standing at the station in that city. It was a few minutes behind its regular schedule and on the night of the accident passed through St. Joseph a few minutes after midnight. It was going in an easterly direction. St. Joseph was not a scheduled stop. The evidence shows that on the west side of Third street between the State route intersection and the railroad crossing there is a church, a one-story building and a tree. The church is located on the southwest corner of the State route intersection, the one-story building, referred to as a poultry house, is 126 feet south of the church, and the tree is between the two buildings. The poultry house is 26 feet in width, 63 feet from the street and 104 feet north of the main track. Eighteen feet north of the main track and 182 feet west of the center of Third street there was a concrete wall 9 or 10 feet high which was formerly a foundation for a grain elevator. A crossarm crossing sign was located on the west side of Third street near the traveled portion of the street and north of the railroad tracks. A similar sign was located at the southeast corner of the railroad intersection for traffic northbound on Third street.

The injuries Berg received in the accident caused mental incompetency. He did not testify in this case. At the time of the trial, Graves was serving in the armed forces and was not called as a witness. However, a statement

which he made to defendant's agent a few days following the accident was introduced in evidence by stipulation. In connection with the statement, Graves went with the agent to the scene of the accident and assisted in making measurements in explanation of his version of it. Graves stated he was familiar with the crossing and knew that the train which was known as the "Midnight Flier" passed through St. Joseph a little after midnight. His evidence shows that after crossing the State route intersection, he and Berg looked for the train a second time before they saw it. The first was when they were between the church and the poultry house and the second just as they passed the poultry house. Graves said he applied the brakes but by reason of the icy condition of the street the car skidded. His first thought to avoid a collision was to turn his automobile to the right, passing on the north side of the tracks in the direction from which the train was coming, but being unable to turn, he proceeded across the tracks. In company with defendant's agent, he went to the scene of the accident and in his statement there he said: "This was all ice in here. I was starting to skid here; my lights showed on this crossing sign. I turned my car to the right; it skidded about 37 feet or to a point approximately 30 feet north of the main track. I knew I couldn't turn it or stop and I proceeded to gun the thing across the crossing and almost made it." The front of the locomotive collided with the automobile, striking it near the right rear wheels. Berg was thrown clear of the wreckage, resulting in his injuries. Graves stated that the windows and doors of the automobile were closed, that visibility through the front windows was good, but he did not know as to the condition of the rear windows opposite where Berg was sitting.

The Appellate Court ruled correctly in holding that defendant had waived all grounds alleged in its motion for a new trial, and that the only question raised by the mo-

tion for judgment *non obstante veredicto* was to ascertain whether there was any evidence which, when taken in its aspects most favorable to the plaintiff, proved or tended to prove plaintiff's cause of action. (*Blumb* v. *Getz,* 366 Ill. 273; *Pollard* v. *Broadway Central Hotel Corp.* 353 Ill. 312; *Libby, McNeill & Libby* v. *Cook,* 222 Ill. 206.) The Appellate Court summarized the points urged as follows: (1) That there was no evidence showing or tending to show defendant was guilty of the negligence charged; (2) that there was no evidence that Berg was in the exercise of due care; (3) that even though defendant was negligent, as charged, such negligence was not the proximate cause of the accident, and (4) that Berg and Graves were engaged in a joint enterprise.

The court held the first, second and fourth points were without merit but sustained the third point, that is, that the negligence of the defendant was not the proximate cause of the accident. The same issues are argued on this appeal.

In appeals from the Appellate Court to this court, it is important to note the distinction made in the cases between questions raised by a motion for judgment *non obstante veredicto* and those raised by a motion for a new trial on the ground that the verdict is not supported by the evidence. The former motion involves a question as to whether there is evidence which, when considered with all reasonable intendments, supports or tends to support the verdict. This is a question of law and, on appeal being granted, this court has jurisdiction to ascertain whether the Appellate Court's conclusion was correct as a matter of law. A motion for a new trial, which challenges the verdict on the ground that it is against the manifest weight of the evidence, raises a question of fact. The Appellate Court may review such question on appeal, but paragraph 3b of section 92 of the Civil Practice Act (Ill. Rev.

Stat. 1943, chap. 110, par. 216,) makes that court's judgment final so that it may not be reviewed in this court.

Evidence was introduced which plaintiff claims tended to prove that certain weeds, buildings, a tree, and the elevator foundation obstructed the view from Third street west, thereby making the crossing at that intersection extrahazardous. The complaint does not appear to have been drafted on that theory and on this appeal the principal controversy is as to whether any warning of the approach of the train was given by the ringing of a bell or sounding of a whistle. It is sufficient to say that the railroad crossing is not unlike, in its surroundings, that of innumerable crossings found in small cities and villages throughout the State. Four of defendant's train crew and three others who were in the vicinity of the railroad tracks testified positively that the bell rang and the whistle blew. On the other hand, four witnesses called by plaintiff testified as to where they were and what they were doing when the train was approaching the crossing. Each stated that they did not hear a bell or whistle, and three of them stated that they were in a position where they would have heard it if it had sounded. Murray Williams, one of plaintiff's witnesses, was with Graves and Berg on the trip to Urbana and had been taken to his home by Graves immediately before they started for Berg's home. Williams' home was a block or two north of the State route intersection. He testified that he was outdoors to the rear of his home, that he heard the rumble of the train but did not hear the sound of a whistle or a bell. He stated that he was in a position where he could have heard it if it had been sounded. George Rutledge and his wife, Virginia, were in their home, located 75 feet south of the tracks on the east side of Third street. They testified that they were awake and that they did not hear the sound of a bell or whistle. Earl Fancher got out of the Graves's car at the

place where his car was parked, and testified that on the way to his home he crossed defendant's tracks one block west of Third street but that he did not hear the sound of a whistle. Defendant contends that all of plaintiff's evidence which bears upon the warning by bell or whistle was negative testimony and did not raise an issue of fact with the positive testimony of defendant's witnesses.

It is well established that in weighing the testimony of witnesses who are otherwise equally credible, one of whom has testified positively to a fact while the other's evidence is negative, the positive testimony is entitled to greater weight than the negative, (*Chicago and Alton Railroad Co. v. Robinson,* 106 Ill. 142,) but no question as to the weight of evidence is involved on defendant's motion under consideration. The only question is as to whether the negative testimony of plaintiff's witnesses may be considered as proving, or tending to prove, that no warning was given of the approach of the train by the sounding of a bell or whistle. It is well settled that negative evidence is admissible where the attending circumstances are such as to show that it has some probative force. (*Chicago and Alton Railroad Co. v. Dillon,* 123 Ill. 570; *Peoria, Pekin and Jacksonville Railroad Co. v. Siltman,* 88 Ill. 529.) It is obvious that if a witness, without explanation of his evidence, testifies that he did not hear a bell or whistle, such testimony would have no value. To give it probative force, it must appear that the witness was in such proximity that he could have heard the sound had it been given, and that his attitude of attention was such that if the bell or whistle had sounded it would have attracted his attention. The evidence of the witness Fancher on the sounding of the whistle is of no value. It does not appear where he was when the train came into St. Joseph, nor does it appear whether he crossed the tracks before or after the train. In fact, he says he did not see or hear

the train. The circumstances surrounding the two Rutledges and the witness Williams were different. Each of them testified that if the bell or whistle had sounded they would have heard it. They were so near they heard the rumble of the train and they testified to facts which indicated an attentive alertness for the sound of the bell or whistle. Such testimony had probative force on the question of fact at issue, and it was for the jury to determine the weight and credit to be given it. We conclude that the negative evidence of plaintiff's witnesses as to the sounding of the bell or the blowing of the whistle raised an issue of fact with positive testimony of defendant's witnesses on the same subject. There was a conflict in the evidence on this issue and its weight was for the jury. The negative testimony of plaintiff's witnesses was sufficient to sustain the finding of negligence when attacked by a motion for judgment *non obstante veredicto.*

In *Chicago City Railway Co.* v. *Loomis,* 201 Ill. 118, the plaintiff testified that in attempting to cross the tracks of the defendant, she heard no warning given of the approach of the car and that she could have heard it had one been given. Other witnesses testified to similar facts. It was held that such testimony created a conflict in the evidence and that the trial court's ruling denying a motion for a directed verdict was proper.

Defendant relies upon a sentence in *Morgan* v. *New York Central Railroad Co.* 327 Ill. 339, where it was said: "This testimony was all merely negative in its character and did not tend to raise an issue of fact as to whether the whistle was blown or not, with the positive testimony that the whistle was sounded." The evidence there under consideration and the attending circumstances from which the witnesses were testifying are distinguishable from the evidence of the Rutledges and Williams in this case, but the statement in the *Morgan case,* insofar as it appears to

hold that negative testimony may never, under any circumstances, raise a conflict with positive testimony, is not adhered to.

In *Menard* v. *Boston and Main Railroad Co.* 150 Mass. 386, 23 N. E. 214, the court, in discussing the quality of negative testimony under different conditions said: "Ordinarily all that a witness can say in such a case when called to prove that a bell was rung is that he did not hear it. Such a statement with no accompanying facts, is merely negative, and of no value as evidence. But attending circumstances may be shown which make the statement strong affirmative evidence. It may appear that all the attention of which the witness was capable was concentrated on the effort to ascertain whether the bell was rung, and his failure to hear it could only have been because it made no sound. A witness may be in any conceivable attitude of attention or inattention which will give his evidence value, or leave it with little or no weight."

The Appellate Court was correct in holding that there was evidence, which, taken in its most favorable aspect for the plaintiff, tended to prove the negligence charged.

On the question of Berg's contributory negligence it should be noted that Berg had nothing to do with the operation of Graves's automobile or in giving directions as to the street they should travel to reach his home. The only evidence bearing upon the question of Berg's due care is found in the statement of Graves introduced in evidence. In answer to a question by defendant's agent as to where they (Graves and Berg) started looking for the train, Graves said: "We looked back here on the other side of it first. Back of the poultry house—between it and the church, about 100 feet. We didn't see the train then." At one place in the statement in reference to Berg, Graves said they both saw the train the instant they passed the poultry house. At the scene of the accident, with defendant's agent, he designated the place where they first saw the train. Such

point was 76 feet north of the main track. "He [Berg] saw the train before the collision. We seen it at exactly the same time. * * * He said: 'Here she comes,' or 'There is a train.' " Such testimony is evidence tending to prove that Berg was in the exercise of some care for his own safety. Whether he should have made earlier observation for the train or whether he should have suggested something to Graves in regard to the icy conditions of the street were questions for the jury to determine in the light of all the circumstances shown. It is sufficient answer to defendant's contention for the allowance of the motion to say that there is some evidence which tends to prove that Berg exercised some care for his own safety.

In *Chicago, Burlington and Quincy Railroad Co.* v. *Pollock,* 195 Ill. 156, it was said: "What is required of one approaching a railroad track depends upon the circumstances of each case. Courts are not at liberty to say, as a matter of law, that one must conduct himself in a particular manner and observe a certain line of conduct in each case and under all conditions. Negligence does not become a question of law alone unless the acts constituting it are of such a character that all reasonable men would concur in pronouncing them so. Human conduct must be judged by human standards."

The next question is as to whether defendant's wrongful act was the proximate cause of the injury. *Merlo* v. *Public Service Co.* 381 Ill. 300, and *Seith* v. *Commonwealth Electric Co.* 241 Ill. 252, and other cases, contain ample definition and illustration as to when a negligent act is the proximate cause of an injury. Ordinarily such question is one of fact for the jury, to be determined from a consideration of all the facts and attending circumstances. (*Illinois Central Railroad Co.* v. *Siler,* 229 Ill. 390.) Defendant's motion for a directed verdict or judgment notwithstanding the verdict raises a question of law as to whether there is any evidence which fairly tends to support

64

the verdict of the jury, (*Curran* v. *Chicago and Western Indiana Railroad Co.* 289 Ill. 111; *Jenkins* v. *LaSalle County Carbon Coal Co.* 264 Ill. 238,) but before such question may be resolved against a plaintiff's verdict, it must appear not only that the facts bearing on such question are not in dispute but that all reasonable men would draw the same inference from such undisputed facts. (*Phillabaum* v. *Lake Erie and Western Railroad Co.* 315 Ill. 131.) To make a wrongful act the proximate cause of an injury, it must be shown that the events which followed the wrongful act extended in an unbroken sequence from the wrong to the injury, and that the injury was the natural and probable consequence of the wrongful act. It must also appear that it was an injury which the wrong-doer, in the exercise of reasonable care, should have foreseen. (*Illinois Central Railroad Co.* v. *Siler,* 229 Ill. 390.) If a new cause intervenes which breaks the sequence between the original wrongful act and the injury so that the cause of the injury is traceable only to the intervening act, the second wrongful act becomes the proximate cause, but it is sufficient to establish liability against the original wrong-doer if it appears that his wrongful act and other wrongful acts concur in causing the injury. (*Seith* v. *Commonwealth Electric Co.* 241 Ill. 252.) In the latter case this court quoted with approval from *Milwaukee and St. Paul Railroad Co.* v. *Kellogg,* 94 U. S. 469, as follows: "The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?"

As previously stated, the Graves automobile stopped at the State route intersection and crossed in low gear, which point was a distance of approximately 370 feet from the railroad crossing. After passing the intersection it moved

toward the crossing at 20 to 25 miles per hour and there is no evidence that such rate of speed was changed at any time before the collision occurred. Graves designated two points as the place in the street where they were when they first saw and knew the train was approaching. One was 76 feet from the crossing and the other just after they passed the poultry house, which was 104 feet from the railroad track. The point 76 feet from the crossing was designated by Graves while he was at the scene of the accident and the conclusions which follow are based upon that being the correct point. The use of such point is more favorable to plaintiff and well-established rules of law require its adoption. The undisputed testimony is that Graves, when he saw the train, applied the brakes and tried to turn the automobile to his right, that is, toward the train, keeping to the north of the track. The brakes held but the wheels skidded on the ice. He was unable to turn to the right and after the automobile had skidded 30 to 35 feet in the direction of the crossing, he undertook to cross the tracks ahead of the train.

Graves's evidence describing his efforts to avoid the collision either by stopping the automobile or turning it from the street leaves no room to doubt that it was the ice on the roadway that rendered his efforts futile. There is no evidence which casts doubt upon the mechanical condition of the brakes or the sufficiency of Graves's effort to have stopped or turned the automobile had it not been for the ice. Thus the ice on the roadway became a superseding and intervening cause, and the injury of Berg was the culmination of the events produced by it. The sequence between defendant's wrongful act and Berg's injury was not continuous and unbroken. Since Graves and Berg saw the train when they were yet a distance where the automobile could have been stopped or turned from its course and the collision avoided had it not been for the ice, it is obvious that the two causes, that is, defendant's wrongful

act and the condition of the street, were wholly unrelated in their operation. They were not concurrent, and there is no basis for an inference that the wrongful act created a condition which made the injury possible. The principle involved is often tersely stated thus: "An injury can not be attributed to a cause unless, without it, the injury could not have occurred." (38 American Jurisprudence, sec. 63, p. 715.) The undisputed facts lead to the conclusion that the icy condition of the street was the proximate cause of the injury and not defendant's wrongful act. Under such circumstances there was no question of fact for the jury.

We have examined the cases from other jurisdictions cited by counsel. Most of them have a factual similarity to the instant case. While there is disagreement as to the conclusions reached, our examination discloses that such disagreement is based largely upon the application of the principles of law rather than upon a difference of views as to the law. The application of the principles which determine when a wrongful act is a proximate cause, as announced in this case, finds support in the following cases where the facts were similar: *Megan v. Stevens,* 91 Fed. 2d 419, 113 A. L. R. 992; *Hickey v. Missouri Pacific Railroad Co.* 8 Fed. 2d 128; *Barrett v. U. S. R. R. Administration,* 196 Iowa, 1143, 194 N. W. 222; *Davis v. Pere Marquette Railway Co.* 241 Mich. 166, 216 N. W. 424, and *Stroud v. Chicago, Milwaukee and St. Paul Railway Co.* 75 Mont. 384, 243 Pac. 1089. Cases relied upon by plaintiff, such as *Saeugling v. Scandrett,* 230 Iowa, 153, 296 N. W. 787, and *Miller v. Union Pacific Railroad Co.* 290 U. S. 227, 54 Sup. Ct. 172, are distinguishable from this case and the other cases cited on the facts.

The Appellate Court reached a like conclusion on the question of proximate cause but did so in the application of the principle that defendant could not have reasonably foreseen the consequences that would follow from its wrongful act. It applied the principle that controlled the

decision in *Moudy* v. *New York, Chicago and St. Louis Railroad Co.* 385 Ill. 446. We adhere to the principles announced on proximate cause in the *Moudy case* but elect to rest the decision upon the principle followed.

In view of the conclusion reached, holding that the negligence charged was not the proximate cause of the accident, it is unnecessary to consider defendant's further contention that Berg was not riding as a guest in the Graves automobile.

The judgment of the Appellate Court is correct and is affirmed.

*Judgment affirmed.*